Insurance Co. v. Dobbins.

TRADERS' INSURANCE COMPANY *v.* DOBBINS & EWING.

(*Nashville.*  December Term, 1904.)

1. **CHARGE OF COURT.** Evidence sufficient to justify submission of question as to custom.

In an action on a policy of fire insurance, testimony that it was the usage of the retail hardware business to handle dynamite justifies a submission to the jury of the question whether it was customary in the retail hardware business to keep dynamite in stock. (*Post, pp.* 231, 232.)

2. **CUSTOM.** Need not extend to the whole State, but only to the region where sought to be applied.

It is not necessary that a custom or usage should extend to the whole State. It is sufficient that it is generally recognized and observed by those engaged in the kind of transactions to which it applies within the region where it is claimed to exist. (*Post, p.* 232.)

Cases cited and approved: Rastetter v. Reynolds, 160 Ind., 133; Gleason v. Walsh, 43 Me., 397; Harper v. Pound, 10 Ind., 32, 36; Grant v. Insurance Co., 5 Ind., 23; Spears v. Ward, 48 Ind., 541; Cox v. O'Riley, 4 Ind., 368, 373; Morningstar v. Cunningham, 110 Ind., 328, 334; Insurance Co. v. Milner, 23 Ala., 420, 427, 428.

3. **FIRE INSURANCE.** Dynamite may be kept under permission to keep "such other merchandise as is usually kept," when usage is shown.

Under a policy of fire insurance prohibiting in its general provisions the keeping of dynamite, with a rider or slip attached thereto insuring enumerated articles and "such other merchandise as is usually kept for sale in a retail hardware store," with expressed permission to keep kerosene oil, gunpowder and a gasoline stove the insured has a right to carry in stock

Insurance Co. v. Dobbins.

dynamite not exceeding the quantity shown to be usual or cus-
tomary among retail hardware merchants in his region. (*Post,*
*pp.* 232-239.)

Cases cited and approved: Insurance Co. v. Hughes, 10 Lea, 461;
Insurance Co. v. Ayers, 88 Tenn., 728; Hoffman v. Insurance
Co., 88 Tenn., 735; Insurance Co. v. Insurance Co., 102 Tenn.,
264; Vette v. Insurance Co., 30 Fed., 668; Kratzenstein v. Assur-
ance Co. (N. Y.), 22 N. E., 221, 5 L. R. A., 799, 801; Allen v.
Insurance Co., 85 N. Y., 473; Hermann v. Insurance Co., 81 N.
Y., 184; Dilleber v. Insurance Co., 69 N. Y., 256, 263; Hoffman
v. Insurance Co., 32 N. Y., 405; Badenfeld v. Association, 12 L.
R. A., 263; Insurance Co. v. Mund, 102 Pa., 89; Burkhard v.
Insurance Co., 102 Pa., 262; Yoch v. Insurance Co. (Cal.), 44
Pac., 189, 34 L. R. A., 857; Insurance Co. v. Degraff, 12 Mich.,
124; Liverpool & London v. Orr (Miss.), 56 Am. Rep., 810, 811;
Collins v. Insurance Co. (N. C.), 28 Am. Rep., 322; Insurance Co.
v. Fleming (Ark.), 44 S. W., 464, 39 L. R. A., 789, 67 Am. St.
Rep., 900; Maril v. Insurance Co. (Ga.), 23 N. E., 463, 30 L. R.
A., 835, 51 Am. St. Rep., 102; Faust v. Insurance Co., 91 Wis.,
158; Stout v. Assurance Co., 12 Fed., 554; Plinsky v. Insurance
Co., 32 Fed., 47; Pindar v. Insurance Co. (N. Y.), 93 Am. Dec.,
544; Barnum v. Insurance Co., 97 N. Y., 188; Insurance Co. v.
Taylor, 5 Minn., 492; Mascott v. Insurance Co., 68 Vt., 253.

Case cited, distinguished, and approved: Insurance Co. v. Kuhn,
12 Heis., 515.

---

FROM MAURY.

---

Appeal from the Circuit Court of Maury County.—
SAM HOLDING, Judge.

G. T. HUGHES and H. P. FIGURES, for Insurance Co.

EV. H. HATCHER and W. S. FLEMING, for Dobbins & Ewing.

MR. JUSTICE NEIL delivered the opinion of the Court.

The Traders' Insurance Company had a general form of policy, which, among other provisions, contained the following: "This entire policy, unless otherwise provided by agreement endorsed herein or added hereto, shall be void . . . if (any usage or custom of trade to the contrary notwithstanding) there be kept, used or allowed, on the above-described premises, benzine, benzole, dynamite, ether, fireworks, gasoline, greek-fire, gunpowder, exceeding twenty-five pounds in quantity, naptha, nitroglycerine, or other explosives, phosphorous or petroleum, or any of its products of greater inflammability than kerosene oil of the United States standard," etc.

"This policy is made and accepted subject to the foregoing stipulations and condittions, together with such other provisions, agreements or conditions, as may be endorsed hereon, or added hereto, and no officer, agent, or other representative of this company, shall have power to waive any provision or condittion of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon, or added hereto, and as to such provisions and conditions no officer, agent or representative, shall have such power, or

be deemed or held to have waived such provision or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

It was the custom of the company in adopting this general form of policy to different kinds of business, to attach thereto a "rider," or printed slip, which was varied to suit the special kind of business.

The defendants in error were hardware merchants in Columbia, this State, and when they insured their stock with the plaintiff in error the general form of policy above referred to was applied to that business by attaching to the policy the following rider or slip, known as "the hardware store form." viz.: $2,000 "on stock of shelf and heavy hardware, iron, steel, cutlery, stoves, nails, furniture, sporting goods, tinware, and on such other merchandise as is usually kept for sale in a retail hardware store." Permission is then given to keep kerosene oil of a specified grade; also twenty-five pounds of gunpowder, in close tin cans; and a gasoline stove for exhibition purposes. The rider closes with the provision: "This slip is hereby attached to and (made) a part of policy number 1065518 of the Traders' Insurance Company of Chicago, Illinois."

At the time the policy was issued the defendants in error were accustomed to keep in stock not exceeding fifty pounds of dynamite, and they continued to do so up to the date of the fire. When the fire occurred they

had on hand twenty or thirty pounds of this substance, and it exploded during the progress of the fire; this explosion having been caused by the walls or some timbers falling upon the dynamite.

The company refused payment, and is now defending on the ground that the above-mentioned dynamite was kept in stock.

Evidence was introduced in the court below to the effect that it was usual in the retail hardware business to keep a small amount of dynamite in stock, and sell it over the counter.

The circuit judge charged the jury, in effect, that, if such was the usage in the retail hardware business, then the defendants in error did not violate the terms of the policy by keeping such goods.

Judgment having been rendered against the company, it appealed, and has assigned errors.

The errors assigned are, in substance, (1) that there was no competent evidence of such usage of trade, and (2) that his honor incorrectly construed the policy.

Both assignments must be overruled.

As to the first point: The witnesses testified generally that they knew that it was the usage of the business to so handle dynamite. On being pressed in cross-examination, they were able to specify only the towns of Columbia, Pulaski, Lewisburg, Lawrenceburg, Fayetteville, Shelbyville, and the city of Nashville. This covered seven counties of the State. One of the witnesses also testified without objection that he had been told by

"drummers" that they sold it to all of the retail hardware stores.

Even laying aside the last item of evidence, we think the testimony is sufficient to show the requisite generality to make the usage good. It is not necessary that it should extend to the whole State. It is sufficient that it is generally recognized and observed by those engaged in the kind of transactions to which it applies within the region where it is claimed to exist, and it is not essential that it be observed in every individual transaction. 29 A. & E. Ency. Law (2d Ed.), page 392 and note 3, citing *Rastetter* v. *Reynolds*, 160 Ind., 133, 66 N. E., 612; *Gleason* v. *Walsh*, 43 Me., 397. See, also, *Harper* v. *Pound*, 10 Ind., 32, 36; *Grant* v. *Lexington, etc., Ins. Co.*, 5 Ind., 23, 61 Am. Dec. 74; *Spears* v. *Ward*, 48 Ind., 541; *Cox* v. *O'Riley*, 4 Ind., 368, 373, 58 Am. Dec., 633; *Morningstar* v. *Cunningham*, 110 Ind., 328, 334, 11 N. E., 593. 59 Am. Rep., 211; *Fulton Ins. Co.* v. *Milner*, 23 Ala., 420, 427, 428. And it is settled that insurance companies are bound to inform themselves of the usages of the particular business insured, and they are presumed to know such usages. 29 Am. & Eng. Ency. Law (2d Ed.), pages 393, 394, and notes.

We are of the opinion that the evidence introduced was properly allowed to go to the jury, and that it was sufficient to support the verdict so far as concerns the point to which it was addressed. The first assignment is therefore overruled.

The second point concerns the construction of the pol-

icy, and herein the effect of the "rider" or "hardware store form" or "slip."

It is a fundamental rule in the law of insurance that the policy shall be construed most strongly against the insurer, and liberally in favor of the insured. 1 Joyce on Insurance, section 222. In construing a condition or stipulation in a policy, doubtful and ambiguous provisions, or those in favor of the insurer, must be taken most strongly against the company. *Vette* v. *Clinton F. Ins. Co.* (C. C.), 30 Fed., 668. In *Kratzenstein* v. *Western Assurance Co.*, (N. Y.), 22 N. E., 221, 5 L. R. A., 799, 801, it is said:

"Where an insurance contract is so drawn as to be manifestly ambiguous, so that reasonable and intelligent men on reading it would honestly differ as to its meaning, the difference should be resolved against the company, because it prepared and executed the agreement and is responsible for the language used and the uncertainty thereby created;" citing *Allen* v. *St. Louis Ins. Co.*, 85 N. Y., 473; *Hermann* v. *Merchant's Ins. Co.*, 81 N. Y., 184, 37 Am. Rep., 488; *Dilleber* v. *Home Life Ins. Co.*, 69 N. Y., 256, 263, 25 Am. Rep., 182; *Hoffman* v. *Aetna F. Ins. Co.*, 32 N. Y., 405, 88 Am. Dec., 337.

And in a note to *Badenfeld* v. *Mass. Mut. Accident Association*, 13 L. R. A., 263, it is said:

"Where the terms of a policy are susceptible without violence of two interpretations that construction which is most favorable to the insured, in order to indemnify him against loss sustained, should be adopted," citing

*Teutonia F. Ins. Co.* v. *Mund,* 102 Pa., 89; *Burkhard* v. *Travellers' Ins. Company of Hartford,* 102 Pa., 262, 48 Am. Rep., 205; *Hoffman* v. *Aetna F. Ins. Co.,* supra.

With this rule of construction in view, it seems there can be no real difficulty in reaching a correect conclusion as to the meaning of the policy of insurance under examination in the present case.  The general form contains the provision that dynamite and certain other substances shall not be kept by the dealer, but contains another provision that the terms of this general form may be modified by additional agreements made by the company or its agents and attached to the policy.  There was such an additional agreement, which provided that the policy should cover such merchandise as is usually kept for sale in retail hardware stores and the evidence shows that dynamite, in the quantities carried by the defendants in error, was such merchandise.  Under this statement of the matter, which is a correct statement of the terms of the policy, it seems there could be no real doubt that the defendants in error did not violate the terms of the policy when they carried the small amount of dynamite referred to in stock.

We are invited by counsel for plaintiff in error to a special consideration of the following words used in the hardware clause:  "On stock of shelf and heavy hardware, iron, steel, cutlery, stoves, nails, furniture, sporting goods, tinware, and on such other merchandise as is usually kept for sale in a retail hardware store." Special stress is laid by counsel on the words "such other mer-

chandise as is usually kept," etc.  It is insisted that the rule of *ejusdem generis* applies, and that, therefore,  it was meant only to include goods of the kind already mentioned, and was not meant to enlarge or extend the scope of the policy beyond the character of goods previously mentioned.  We do not think this is the correct view of the words referred to.  It is certainly not the view taken of the expression "such as" in standard dictionaries.  In the Century Dictionary and Cyclopedia it is said.  " 'Such' always implies from its sense a comparison with another thing, either unexpressed as being involved in the context (as we have never before seen such a sight [sc. as this is] ; we cannot approve such proceedings [sc as these are] ; such men [sc. as he is] are dangerous), or expressed, such being then followed by as or that before the thing which is the subject of comparison  (as,  we have never had such a time as the present;  give  your children such precepts as tend to make them wiser and better; the play is not such that I can recommend it)."  Examples given under this definition are:  "There is no place in Europe  so  much  frequented  by  strangers, whether they are such as come out of curiosity or such who are obliged to attend the court of Rome on several occasions." Addison, Remarks on  Italy  (Works,  Ed. Bohn, 1, 420).  Again: "Trade brings men  to look each other in the face, and gives the parties the knowledge that these enemies over sea or over the mountain are such men as we, who laugh and grieve, who love and fear as we do." Emerson, War.  The first or primary definit-

ion of the word "such" given in the authority above re-
ferred to is, "of that kind; of like kind or degree; like;
similar." Following this definition is a short essay upon
the expression "such as," which we have quoted  above,
and the two examples which we have copied, along with
numerous other instances of the same kind.   There is a
secondary meaning of the word "such," which is given
as "the same as previously mentioned   or   specified;"
"not other or different." We are of  opinion,  however,
that the primary meaning of the word is the correct one
to be applied in the present case, especially as the word
"such" is followed by the word "as."   This meaning is
strengthened by the use of the word "other." The words
being read together as they stand  in the  clause,  "and
such other merchandise as is usually kept for sale in a
retail hardware store," mean  articles  in  addition  to
those already mentioned; their kind being only limited
by the provision that they shall be of a sort usually kept
in retail hardware stores.   We really think there is no
doubt about the correctness of this construction.

Counsel have discussed to considerable extent in  the
able briefs filed the question at large when  the  general
inhibitions contained in fire policies as  to  the  class of
goods will be controlled by the description of the stock
insured in the special policy under examinaton.   It is-
perhaps, not necessary that we should go  further  into
this matter, but we shall refer to some of the authorities
bearing  upon the point.

In 1 May on Insurance, section 233, it is said:

"While, however, as we have seen, if the policy insures only one class of articles, and expressly excludes other classes, the keeping of an article in the excluded class, although it be usually kept with the class of goods actually insured, will avoid the policy, yet if the policy describe property, the stock insured, as 'such as is usually kept in a store,' this qualification enlarges the scope of the policy, so that it will attach to and cover memorandum articles, or any articles enumerated in the non-insured classes. The keeping of the memorandum articles is usually made to avoid the policy, unless otherwise provided therein. And this qualification of the description of the subject-matter is equivalent to a provision in the policy whereby the memorandum articles are permitted to be kept and insured. So where the policy is upon merchandise 'such as is usually kept in country stores.' Under such a description of the risk all articles such as can be shown to be usually kept in country stores are covered and protected by the policy, although they may be enumerated in the second '(prohibited articles)' classes of risks. If fireworks are usually kept in confectionery stores, the keeping of them will not violate a policy covering the usual stock of such stores, although they are expressly prohibited in the printed provisions."

As fully sustaining the foregoing, we cite the following authorities: *Yoch* v. *Ins. Co.* (Cal.), 44 Pac., 189, 34 L. R. A., 857; *Niagara Ins. Co.* v. *Degraff*, 12 Mich., 124; *Liverpool & London* v. *Orr* (Miss.), 56 Am. Rep., 810, 811; *Collins* v. *Ins. Co.* (N. C.), 28 Am. Rep., 322;

*Ins. Company* v. *Fleming* (Ark.), 44 S. W., 464, 39 L. R. A., 789, 67 Am. St. Rep., 900; *Maril* v. *Ins. Company* (Ga.), 23 S. E., 463, 30 L. R. A., 835, 51 Am. St. Rep., 102; *Faust* v. *Ins. Co.,* 91 Wis., 158, 62 N. W., 883, 30 L. R. A., 783, 51 Am. St. Rep., 876; *Stout* v. *Commercial Assur. Co.* (C. C.), 12 Fed., 554; *Plinsky* v. *Germania Ins., Co.* (C. C.), 32 Fed., 47; *Pindar* v. *Ins. Co.* (N. Y.),93 Am. Dec., 544; *Barnum* v. *Ins. Co.,* 97 N. Y., 188; *Phoenix Ins. Co.* v. *Taylor,* 5 Minn., 492 (Gil. 393); *Mascott* v. *Ins. Company,* 68 Vt., 253, 35 Atl., 75.

The subject is quite fully discussed in the above cases, most of which are easily accessible, and we need not pursue the subject further. Some observations are made in the briefs of counsel for plaintiff in error concerning the controlling nature of writing entered upon the face of a policy as distinguished from a subsequent agreemeent typewritten or printed and pasted thereon. There is no real difference in principle.

We are referred by counsel for plaintiff in error to *People's Ins. Co.* v. *Kuhn,* 12 Heisk., 515, as an authority in favor of its contention. That case, however, can give to plaintiff in error no aid, for two reasons. In the first place, the turning point in the case was a clause which appeared in the policy there under construction, which does not appear in the present policy, viz.: "The use of general terms, or anything less than a distinct, specific agreement, clearly expressed, and indorsed on the policy, shall not be construed as a waiver of any printed or written condition or restriction therein." Sec-

ondly the principle of construction adopted in that case has been discredited in later cases. See *Insurance Co. v. Hughes,* 10 Lea, 461; *Insurance Co.* v. *Ayers,* 88 Tenn., 728, 13 S. W., 1090; *Hoffman* v. *Insurance Co.,* 88 Tenn., 735, 14 S. W., 72; *Royal Ins. Company* v. *Vanderbilt Ins. Co.,* 102 Tenn., 264. 52 S. W., 168. A short quotation from the syllabus of each of these cases, correctly stating the substance of the case, will now be given. In the first-cited case it is said: "The rule for the construction of contracts for insurance is that, having indemnity for their object, they will be liberally construed to that end." In the second case it is said: "The sole object of insurance being indemnity against loss, any ambiguity in the policy will be resolved against the insurer, so as to effectuate that purpose." In the third-cited case it is said: "That construction of an insurance policy will be adopted, where its language is of doubtful import, which is most favorable to the assured, and best secures to him that indemnity against loss, which is the sole object of insurance." In the last-cited case, it is said in the body of the opinion: "It is well settled that when a policy of insurance contains contradictory provisions, or has been so framed as to make necessary a judicial construction, its own words will be taken most strongly against it."

For the reasons above given, we are of opinion that there was no error in the action of the court below, and the judgment of that court is affirmed.