## GEORGE DEBARD CONLEY v. PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA.

Middle Section. July 16, 1928.

Petition for Certiorari denied by Supreme Court, December 22, 1928.

B. E. Holman, of Fayetteville, and J. J. Finley, of Manchester, for appellant.

A. L. Davidson, of Tullahoma, for appellee.

FAW, P. J. This suit was begun by bill in the Chancery Court of Coffee county on June 3, 1926, and is based on an insurance policy issued on August 17, 1922, by the defendant Insurance Company, by which policy the defendant contracted to insure the life of the complainant George DeBard Conley in the sum of $2500.

In addition to the life insurance contract, the policy contains provisions for a "Permanent Total Disability Benefit." Basing his suit on the terms of the policy providing for the "Permanent Total Disability Benefit," the complainant sued for monthly benefits of $25 each from May 10, 1924, to March 10, 1926, and for premiums aggregating $140.26 paid by complainant to defendant during the period named. The Chancellor (by decree entered January 30, 1928) granted the complainant a judgment against the defendant for twenty monthly benefits of $25 each, aggregating $500, and for premiums paid for the years of 1924 and 1925, amounting to $140.26, making a recovery of $640.26, upon which interest of $61.90 was allowed from the filing of the bill. The costs of the cause were also taxed to the defendant. From the aforesaid decree of the chancery court defendant Insurance Company prayed an appeal to this court, which was granted by the chancery court and perfected by the defendant.

The appellant's assignments of error challenge the Chancellor's construction of the insurance policy sued on, and the ascertainment of the proper interpretation and construction of that instru-

ment, particularly the provisions relating to the "Permanent Total Disability Benefit," constitutes the determinative question in the case.

The face of the policy, which constitutes the body of the insurance contract, is in words and figures as follows:

"Founded 1868

"The Pacific Mutual Life Insurance Company, of California

" (Capital Fully Paid $1,500,000)

"Number 466531          . Age 24          Amount $2500

"In Consideration of the application for this Policy, a copy of which is attached hereto and made a part hereof, and of the payment in advance of the Annual premium of Seventy and 13/100 dollars and of the payment of a like premium on the Seventeenth day of August in each year during the continuance of this Policy until premiums shall have been paid for twenty entire years, or until the prior death of the Insured;

"Promises to Pay, at the Home Office of the Company in the City of Los Angeles, on receipt at said Home Office of due proof of the death of George DeBard Conley, herein called the Insured, Twenty-Five Hundred Dollars, less any indebtedness hereon to the Company and any unpaid portion of the premium for the then current policy year, to Elizabeth Smith Conley, Mother of the Insured, Beneficiary.

"Permanent Total Disability Benefit

"Should the Insured, before attaining the age of sixty years and while this Policy is in full force and no premium thereon in default, become so disabled as to be totally and permanently unable to perform any work or engage in any occupation or profession for wages, compensation or profit, or suffer the irrecoverable loss of the entire sight of both eyes, or the use of both hands or feet, or of one hand and one foot, the Company will waive the payment of future premiums and pay the Insured Twenty-Five Dollars immediately on receipt of due proof of such disability or loss and a like sum on the first day of each month thereafter as long as the Insured shall live, and such waiver of premiums and payments to the Insured shall not affect any other benefits or values granted under the conditions of the Policy, provided, however, as follows:

"Should the Insured at any time thereafter, when required by the Company, (such requirement, however, not to be exacted more frequently than once a year), be unable to furnish due proof of the continuance of his right to the foregoing benefits, the Company will discontinue the same and require the payment of any premiums which may thereafter become due under

the conditions of the Policy, but no reimbursement shall be required for any premiums waived or monthly payments made.

"Should the Insured, in time of war, engage in any military or naval service, this Benefit shall thereby be made void.

"Should the Insured, before attaining the age of sixty years, elect to have this Benefit cancelled, a reduction in the annual premium of twenty-five cents for each Ten Dollar unit of monthly payment hereunder will thereafter be made.

"The first year's insurance under this policy is term insurance.

"The contents of the succeeding pages of this Policy and the benefits, conditions and values set forth thereon are made a part hereof.

"In Witness Whereof, The Pacific Mutual Life Insurance Company of California has, by its proper officers, signed this Contract at the City of Los Angeles, as of the Seventeenth day of August, 1922.

"Examined K. K.

"J. E. Miller
"Assistant Secretary

"George I. Cochran,
"President

"Annual Dividend, 20 Payment Life. Premiums Payable for 20 Years, or Until Prior Death. Permanent Total Disability Benefit. Form 5096. 1-21."

The Chancellor's opinion (including his finding of facts) is as follows:

"The crux of this lawsuit is a construction of the permanent disability clause in the policy. Said clause is as follows—'Should the insured before attaining the age of sixty years and while this policy is in full force and no premium thereon in default, become so disabled as to totally and permanently be unable to perform any work or engage in any occupation or prefession for wages, compensation or profit, or suffer the irrecoverable loss of the entire sight of both eyes, or the use of both hands or feet, or of one hand and one foot, the company will waive the payment of future premiums and pay the insured $25 immediately on receipt of due proof of such disability or loss and a like sum on the first day of each month thereafter as long as the insured shall live, and such waiver of premiums and payments to the insured shall not effect any other benefits or values granted under the conditions of the policy, provided, however, as follows: Should the insured at any time thereafter, when required by the company, (such requirement, how-

ever, not to be exacted more frequently than once a year) be unable to furnish due proof of the continuance of his right to the foregoing benefits, the company will discontinue the same and require the payment of any premiums which may thereafter become due under the condition of the policy, but no reimbursement shall be required for any premiums waived or monthly payments made.'

"The policy is a twenty-year life policy with permanent total disability benefit, as shown by the clause above.

"Complainant's feet were badly burned in 1924, and I do not think there is any question, but that the proof shows he was totally disabled for the time alleged.

"Looking to the substance and rule that if a policy of insurance is capable of two constructions, that interpretation will be placed upon it which is most favorable to the insured and the language used in the policy, that is the clause in question, the relation of the parties and to the subject-matter of contract, the court is inclined to the opinion that the clause here under consideration is not such as will defeat complainant's recovery. It seems to me that we would have an anomalous situation as well as an inequitable rule that would require the insured to die before it can be shown or determined whether the disability is permanent.

"I think the language employed in the clause referred to contemplates and anticipates a similar case to the one at bar. Its true the relation is a contractual one, but it seems to me that the effect of the language used would convey to the ordinary individual that there was no intention to require a recovery under this clause that there should be an everlasting, perpetual disability. Why insert the clause that the company may exact not oftener than once a year, proof of the continuance of the disability and the right of the insured to participate in the benefits provided under the clause, and the provision that if the insured is unable to furnish proof of the continuance of the disability the payment of the premiums which were to be waived upon such proof of disability, would be required to be made by the insured, but no reimbursement of payments waived or the monthly payments made to the insured. I think the insured was justified in placing the construction indicated upon the contract, and that it was anticipated by the insurer that just such cases might arise.

"The fact that there was a companion policy providing for temporary benefits, cannot, in my opinion change the terms or conditions of the policy under consideration.

, "The term 'permanent' is construed in accordance with this interpretation in the case of Penn. Mutual Ins. Co. v. Milton, 40 A. L. R. 1382, and in the case of Texas Pacific R. Co. v. City of Marshall, 136 U. S., 395; 34 L. Ed., 385, citing a similar construction in case of Mead v. Ballard, 74 U. S. (7 Wall.), 290. The interpretation put upon the word 'permanent' in these cases is cited, held and approved in W. U. Tel. Co. v. Penn. Co., 68 L. R. A. 983; Sullivan v. Detroit Y. & A. A. R. Co., 64 L. R. A., 678; Fla. Cen. & P. R. Co. v. State ex rel., 20 L. R. A. 423; Texas & P. R. Co. v. Scott, 37 L. R. A. 97; and in Roses Notes under the two United States cases cited above, there is a long list of cases approving and adopting this interpretation of the word 'permanent,' including 140 Fed., 706 (C. C. A. Vol. 72, p. 195) which is Nashville Packing Co. case; 130 Fed. 438; 125 Fed. 71; 100 U. S. 562, besides a number of State authorities. These cases seem to be based upon reason and weight of authority. In the Genell case, cited in Anno. 40 A. L. R, 1386-7 and Shipp v. Metropolitan Life Ins. Co.— a recent Mississippi case—it does not appear just what follows the clause quoted in the Genell case or what the clause was in the Mississippi case, except 'Total and Permanent Disability.' In the case at bar the latter part of the clause, I think, is a qualification of, not an interpretation of, the clause and its intended import.

"Upon the whole record the court is of opinion that the complainant is entitled to the relief prayed for with cost, except twenty-five per cent penalty which will not be decreed under the facts appearing in this case. Interest will be allowed on the premiums paid, and the monthly payments due from date bill was filed.

"So decree, and grant an appeal with time to perfect if desired.

"January 10, 1928.

"T. L. Stewart, Chancellor."

It appears from the record that, in the course of an X-ray treatment for eczema, the plaintiff's feet were severely burned, and we find that, as a result of these burns, he was so disabled as to be totally "unable to perform any work or engage in any occupation or profession for wages, compensation or profit" from May 10, 1924, to March 10, 1926, a period of twenty months. To this extent, we concur in the finding of the learned Chancellor.

But it is an undisputed fact that upon the termination of the period above named, and before this suit was begun, the complainant had recovered from his "disability," and thereafter was (and,

so far as the record shows, still is) able to perform the same kind of work and engage in the same occupation for "compensation or profit" as before he became disabled. We are, therefore, unable to concur in the further finding of the Chancellor that the complainant's "disability" was "permanent," within the contemplation of the insurance contract in suit.

The ascertainment of the expressed intention of the parties is the prime object of the interpretation of all written contracts, including insurance policies. "An insurance policy is to be construed according to its sense and meaning, as collected in the first place from the terms used in it, which terms are themselves to be understood in their plain, ordinary, and popular sense, unless they have generally in respect to the subject-matter, as by the known usage of trade or the like, acquired a peculiar sense distinct from the popular sense of the same words; or unless the context evidently points out that they must in the particular instance, and in order to effectuate the immediate intention of the parties to the contract, be understood in some other special and peculiar sense." 14 R. C. L., p. 925, Sec. 102.

"Where words are so used in the contract of insurance that their meaning is ambiguous or susceptible of two interpretations differing in import, that interpretation which will sustain the claim of the policy holder and cover the loss should be adopted." Laue v. Grand Fraternity, 132 Tenn., 235, 247, 177 S. W., 941. This is for the reason that the insurer "prepared and executed the agreement and is responsible for the language used and the uncertainty thereby created." Insurance Co. v. Dobbins, 114 Tenn., 227, 233, 86 S. W., 383. But this is merely a rule of construction, and applies only where the policy is manifestly ambiguous, or, in other words, is reasonably subject to two differing interpretations, one of which favors and the other is adverse to the insurer. Life Insurance Co. v. Galbraith, 115 Tenn., 471, 483, 91 S. W., 204; Insurance Co. v. Dobbins, supra.

"Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence (intention) as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties and embodying requirements, compliance

with which is made the condition to liability thereon. Neither does the rule prevent the application of the principle that policies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties." 14 R. C. L., pp. 931-932, Sec. 103.

The "plain, ordinary and popular" understanding of the adjective "permanent" is in accord with the definition given in Webster's New International Dictionary (1925 Edition), as follows: "Continuing in the same state, or without any change that destroys form or character; remaining unaltered or unremoved; abiding; durable; fixed; stable; lasting."

The antonym of permanent is "temporary;" and in 1 Corpus Juris, p. 466, Sec. 177, it is said: "Where the policy provides that the injury must be permanent as well as total no recovery can be had for an injury which is but temporary;" citing Hollobaugh v. Peoples Insurance Co., 138 Pa. St. 595, 22 Atl. 29, and Fidelity Etc. Co. v. Hart, 142 Ky. 25, 133 S. W., 996.

In 5 Joyce on Insurance (2 Ed.), Sec. 3035, it is said: "The policy must be construed with reference to the express terms of the contract, and therefore the word 'permanent,' in connection with the word 'disability' and the obvious purposes of the contract, will be held to exclude the consideration of a disability which is merely temporary;" citing Hollobaugh v. Peoples Insurance Co., supra.

The "obvious purposes of the contract" on which complainant Conley has sued were (1) to bind the insurer to pay the sum of $2500 to the named beneficiary upon the death of the insured, if the premiums were paid as stipulated in the policy, and (2) to bind the insurer to pay to the insured the sum of $25 on the first day of each month "as long as the insured shall live," if the insured should, before attaining the age of sixty years and while the policy is in full force and no premiums in default thereon, became so disabled to be "totally and permanently" unable to perform any work or engage in any occupation by which to earn a living; and the insurer further covenanted that in the event of such total and permanent disability it would waive the payment of future premiums by the insured.

In other words, the purposes of the policy were to protect the beneficiary against the death of the insured, and to protect the insured against a total and permanent loss of his earning power. The rationale of such a contract, that is, the coupling of the provision for such a "permanent total disability benefit" with the life insurance contract, seems obvious. To the policy holder without an income independent of his personal labor or pursuit of his occupation, a total and permanent disability would mean not only

the loss of the power to earn a livelihood but also a loss of the ability to pay the premiums on the life insurance policy. Hence, for an additional annual premium of only sixty-two and one-half cents, the insurer contracts that it will indemnify the insured (to the extent of $25 per month and a waiver of all future premiums) against the permanent cessation (which may not inaptly be described as the death) of his personal ability to earn an income.

If the disability contemplated by the contract was not a permanent one, according to the natural and ordinary meaning of that term, why stipulate that the benefit will be paid each month ''as long as the insurer shall live?'' If anything less than the remainder of the life of the insured was intended, it would have been easy to stipulate that the monthly benefit would be paid as long as such disability shall continue, or during the continuance of such disability.

It is seen from the written opinion of the learned Chancellor that he viewed the provision of the policy by which the insurer reserved the right to exact from the insured at any time (but not more frequently than once a year) proof of the continuance of his disability etc. as a ''qualification'' of the words ''permanent'' and ''permanently'' used in the policy, and that, by reason of that provision, the policy contract may properly be construed as covering the complainant's disability on which this suit is predicated. We think this construction attaches an unintended and undue significance to the provision just mentioned. It signifies, in our opinion, merely a recognition of the well-known frailty and uncertainty of human testimony with respect to the permanent character of a ''disability,'' as that term is used in the policy here under consideration.

The question thus presented was recently (on March 13, 1928) decided by the Supreme Court of Iowa in the case of Hawkins v. John Hancock Mutual Life Insurance Company, 218 N. W., 313. That was a suit by the insured to recover a ''disability benefit'' claimed to be due under a life insurance policy for $2000 containing a ''total and permanent disability benefit provision'' which, although somewhat more elaborate in its verbiage, was, in substance and effect, the same as the ''permanent total disability benefit'' of the policy now before us. The contention of the plaintiff in the Iowa case is stated in an excerpt from the court's opinion, as follows:

> ''Plaintiff argues, in substance, that it is not possible, and a proper construction of the policy does not require, that he prove that he will be unable to pursue any kind of occupation for gain or profit for the rest of his life; that the policy must be so construed as to give effect, if possible, to all of its

provisions; that though he may recover from a total disability, still, ·construing the disability clause as an entirety and in view of the rule that the language adopted is that of the company and must be construed most strongly against it, the purpose of the policy was to grant disability benefits during the period of total disability, nothwithstanding that such disability might not continue during the lifetime of the insured.''

And later, in the course of the same opinion, the court said: ''Plaintiff places great reliance on paragraph 5 that the company shall have the right to require proof of continuance of the disability, and, if insured fails to furnish it, or, if he shall so far recover as to be able to perform remunerative work of any kind, the disability benefits will be discontinued.''

Paragraph 5, to which the court refers in the excerpt last quoted, was in these words:

''5. Proof of Continued Disability.—The company shall have the right to require at any time, but not oftener than once a year, due proof of the continuance of the disability. If the insured shall fail to furnish such proof when required to do so, or shall so far recover as to be able to perform work of any kind for compensation, gain or profit, the disability benefits shall be discontinued.''

The response of the Iowa court to the complainant's contention with respect to the effect of paragraph 5, supra, was as follows:

''It is obvious that a disability which is temporary or transient cannot be permanent. Whether an injury is permanent or temporary must in many cases be a matter· of opinion. The evidence from which an opinion would be formed might vary. It might seem during the early stages of the disability that recovery is impossible and the injury must be permanent, whereas time might develop such changes as to demonstrate that the earlier opinion was erroneous. Total or partial recovery from a seeming permanent injury does occur. In order to claim the benefit, proof must be presented. The proofs that may be presented during the first six months may be entirely different from the proofs that may be presented after a year or two. Notwithstanding this possibility, it would be unjust to withhold the benefit merely because future developments may show that an injury seemingly permanent is in fact temporary. It is one thing to withhold benefits as long as life lasts in order to avoid the possibility of any mistake and pay nothing until it is finally and conclusively determined that the injury is permanent, which in many cases can only be at death, and an entirely different thing to accept provisionally apparent proofs of per-

manency and make payments accordingly—that is, to give the insured the benefit of his seeming condition while it lasts with the right of the company to discontinue should the condition turn out to be temporary. Fairness to the policyholder requires that reasonable evidence of permanency be accepted and the benefit paid so long as such apparent permanency exists, but, if it later appears that the seeming permanent condition is not such, that then the company shall be no longer held to continue paying benefits. One of the purposes of the provision is to secure the insurance without further premium to one who becomes permanently disabled. . . .

"The company, though reasonably satisfied that the disability is permanent and willing to pay the benefits, may still have doubts. In view of such possibilities, it retains the right to discontinue if it shall later appear that the disability is temporary."

A previous decision of the Court of Appeals of New York in the case of Ginell v. Prudential Insurance Company (237 N. Y. 554, 143 N. E. 740) is in accord with the opinion in Hawkins v. John Hancock Mutual Life Insurance Co., supra. In the New York case the trial court and the majority of the judges of the intermediate appellate court made the same ruling as that of the Chancellor in the instant case, but this was unanimously reversed by the Court of Appeals and the opinion of the dissenting minority of the Appellate Division was adopted, which opinion is in line with the Iowa case, supra. (See Annotation, 40 A. L. R., p. 1386, for a review of the Ginell case).

In Shipp v. Metropolitan Life Insurance Company (February 28, 1927), 146 Miss. 18, 111 So. 453, it appeared that Shipp was totally disabled for a period of eight months, when he recovered to the extent that the disability was not total, but it was partial and permanent after that time. He sued to recover $240 under a policy of insurance which provided for compensation for "total and permanent disability." The Supreme Court construed the aforesaid policy provision to mean that before the insured can recover thereunder, his disability must be both total and permanent at the same time, and a judgment of the trial court sustaining a demurrer to the plaintiff's declaration was affirmed.

The provisions of the policy on which the Shipp case, supra, was based do not appear in the opinion as published in the Southern Reporter, but appellant's counsel (in the present case) say in a supplemental brief that it appears from an inspection of the record in the Shipp case that the policy provisions construed in that case read as follows:

"Hereby Agrees, that upon receipt of due proof that the insured has become totally and permanently disabled, as the result of bodily injury or disease occurring and originating after the issuance of said Policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit and that such disability has already continued uninterruptedly for a period of at least three months, it will, during the continuance of such disability.

"1.   Waive the payment of each premium falling due under said Policy and this Supplementary Contract, and,

"2.   Pay to the Insured, or a person designated by him for the purpose or if such disability is due to, or is accompanied by, mental incapacity, to the beneficiary of record under said Policy a monthly income of $10 for each $1000 of insurance, or of commuted value of installments, if any, under said Policy.

"Such waiver shall begin as of the anniversary of said Policy next succeeding the date of the commencement of such disability, and such payments shall begin as of the date of the commencement of such disability provided, however, that in no case shall such waiver begin as of any such anniversary occurring, nor shall such payments begin as of a date more than six months prior to the date of receipt of the required proof.

"Notwithstanding that proof of disability may have been accepted by the company as satisfactory, the insured shall at any time, on demand from the company, furnish due proof of the continuance of such disability, but after such disability shall have continued for two full years the company will not demand such proof more often than once in each subsequent year.   If the insured shall fail to furnish such proof, or if the insured shall be able to perform any work or engage in any business whatsoever for compensation or profit, the monthly income herein provided shall immediately cease, and all premiums thereafter falling due shall be payable according to the terms of said Policy and of the Supplementary Contract.

"The waiver of premiums and monthly income payments herein provided shall be in addition to all other benefits under said Policy, provided, however, that, if there be indebtedness to the company under said Policy, the interest on such indebtedness shall, if not otherwise paid, be deducted from said monthly income payments.   Monthly income payments shall not be subject to commutation."

With the exception of the case of Penn Mutual Life Insurance Co. v. Milton (Ga.), 40 A. L. R. 1382, the cases cited by the Chancellor in support of his ruling did not involve insurance contracts, but contracts of an altogether different character.   Some of these cases in-

volved the meaning and effect of the word "permanent," as used in the contracts there under investigation, but the subject-matter and the terms of the contract involved in each of those cases were so foreign to the contract here in suit that we do not think that any one of them is sufficiently analogous to afford a precedent for a ruling in the instant case. All contracts must be construed with reference to their subject-matter, and the intention of the parties is to be ascertained not only from the words employed but from the connection in which they are used and the subject-matter in reference to which the parties are contracting. The subject-matter of the contract and the purpose of its execution are material to the ascertainment of the intention of the parties and the meaning of the terms used by them. 6 R. C. L., p. 837, Sec. 226.

In the case of Penn Mutual Life Insurance Co. v. Milton, supra, the Supreme Court of Georgia had before it for construction certain provisions of an insurance policy, as follows:

"Total and Permanent Disability Benefits, Waiver of Premium—Annuity Payment.—If after one years' premium shall have been paid on this policy, and before default in the payment of any subsequent premium, the insured shall furnish to the company due proof that prior to the maturity of this policy and before attaining the age of sixty, he has become wholly disabled by bodily injury or disease, so that he is and thereby will be permanently and continuously unable to engage in any occupation whatever for remuneration or profit, and that such disability has existed continuously for not less than sixty days prior to the furnishing of proof, thereupon the company will grant the following benefits:

" '(a) Waiver of Premium.—The company by indorsement hereon shall waive the payment of the premiums which thereafter may become due under this policy during the continuance of the said total disability of the insured. In making any settlement under this policy the company shall not deduct any part of the premiums so waived, and the nonforfeiture values of this policy shall increase from year to year in the same manner as though any premiums waived under this provision had been paid in cash.

" '(b) Annuity Payment.—Furthermore, the company will pay to the insured each month fifty dollars, being a sum equal to one per cent of the face of this policy, the first monthly payment to be made six months after receipt of due proof of the said total disability accompanied by this policy for indorsement, and subsequent payments monthly thereafter during the continuance of said total disability of the insured and prior

to the maturity of this policy. The amount payable at the maturity of this policy shall not be reduced by any payments under this disability provision.'"

It was held in the Milton case, supra, that a total disability which had lasted for sixteen months, and from which the insured then recovered, was a "permanent disability" within the policy provisions just quoted. The reasoning of the court may be seen from an excerpt from the opinion, as follows:

"The words 'permanently and continuously,' standing alone, would mean that the total disability must be a lasting one; but when these words are taken in connection with other language used in the several provisions of this policy set out above, the fair construction of these words is, not that the total disability shall last or exist forever, but that a disability which existed continuously for no less than sixty days prior to the furnishing of proof is, within the meaning of the policy, a 'permanent disability.'

"The first provision quoted expressly provides that where 'such disability has existed continuously for not less than sixty days prior to the furnishing· of proof, thereupon the company will grant' to the insured the benefits provided for in the policy. So it seems to us that the evident purpose of the provision is that a total disability existing for a period not less than sixty days prior to the furnishing of proof thereof is to be considered a permanent disability. The other language used in these provisions strengthens this view and construction. Upon proof being furnished of such disability, 'the company by indorsement . . . shall waive the payment of the premiums which thereafter may become due under this policy during the continuance of the said total disability of the insured.' This provision carries an implication that the insurer contemplated that the disability might terminate, in which event the waiver of the payment of premiums would come to an end, and the insured would have to begin to pay premiums again. It contemplates that the disability, proof of which would entitle the insured to the benefits provided, might not last forever, but might end, and that after the cessation of the total disability the benefits would cease. The monthly payments of $50 would be made 'during the continuance of said total disability of the insured and prior to the maturity of this policy.' This language clearly indicates that the insurer meant that the total disability, on proof of which it would grant the benefits named, was not one which might last during the entire life of the insured, but one which might end prior to his death. So we are of the opinion that under the terms of this policy a total dis-

ability which lasted for sixteen months was a 'permanent disability,' in the meaning of the above provisions of this policy."

The opinions in the cases cited from Iowa, New York and Mississippi are, we think, more in accord with sound reason than the opinion last quoted.

For the reasons stated herein, we think the Chancellor erred (1) in overruling defendant's demurrer to complainant's bill, and (2) in sustaining complainant's bill and allowing him a recovery on final hearing. Appellant's assignments of error are therefore sustained, and a decree will be accordingly entered reversing the decree of the chancery court and dismissing complainant's suit. The costs of the cause in the chancery court and in this court will be adjudged against the complainant and the surety on his prosecution bond filed in the chancery court.

Crownover and DeWitt, JJ., concur.