## W. S. HOLLOBAUGH v. PEOPLES' INS. ASS'N.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF BUTLER COUNTY.

Argued October 21, 1890—Decided January 5, 1891.

[To be reported.]

(*a*) A certificate of membership, in a mutual accident insurance association, stipulated for the payment of weekly relief in the event of accidental injuries to the member, permanently disabling him totally or partially, and the maximum number of weeks during which relief would be allowed for each.

(*b*) Indorsed on the certificate was a clause that payment of weekly relief, for periods scheduled, should be in full satisfaction of all claims, whether the injuries were totally or partially disabling; the schedule specifying certain injuries, with a period of relief for each, and stating that injuries not specified would be adjusted on their merits:

1. The stipulations in the indorsement must be construed as applying to such injuries only as were within the terms of the contract found in the body of the certificate; and, as the certificate provided for liability only in case of a total or partial but permanent disability, no liability existed for a disability which was but temporary.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 155 October Term 1890, Sup. Ct.; court below, No. 25 December Term 1889, C. P.

On September 25, 1889, William S. Hollobaugh brought assumpsit against the Peoples' Mutual Accident Insurance Association, upon a contract by which the defendant association engaged to indemnify the plaintiff against death, or certain bodily injuries arising from accident. The defendant pleaded non-assumpsit, etc.

At the trial on January 7, 1890, it was shown that the defendant association, engaged in insuring against accident upon the mutual assessment plan, issued to the plaintiff on December 15, 1888, a certificate of membership, the material parts of which were as follows:

" Now therefore, this certificate of membership witnesseth, that William S. Hollobaugh, of Barnharts Mills, county of

Butler and state of Pennsylvania, by occupation, profession or employment, a superintendent oil lease (not working) is hereby accepted as a full rate member. . . . .

"The principal sum under this certificate of membership not to exceed four thousand dollars, . . . . to be paid to Mary G. Hollobaugh, . . . . sixty days after receipt of sufficient and satisfactory proof at the principal office of the Association in Pittsburgh, that the member at any time, within the continuance of this certificate, shall have sustained bodily injury, effected through involuntary, external, violent and accidental means, within the intent and meaning of this certificate and the conditions herein contained and complied with, and such injuries directly, wholly and alone, independently of all other causes, shall occasion death within ninety days from the happening thereof; or, if the member shall sustain bodily injuries by means as aforesaid, which shall, independently of all other causes, immediately and wholly disable and prevent him from the prosecution of any and every kind of business pertaining to the occupation under which he is rated and accepts membership, he shall be indemnified against loss of time caused thereby, and shall receive a weekly relief not to exceed twenty dollars per week, and shall receive like weekly relief for such period of continuous disability as shall immediately follow the accident and injuries, not to exceed however, twenty-six consecutive weeks from the happening of such accident.

"The relief for total permanent disablement, viz., the loss of both hands, both feet, or hand and foot, by means as aforesaid, within sixty days from the date of injury, shall not exceed twenty-five hundred dollars.

"The relief for partial permanent disablement, viz., the loss of one hand, or foot, or both eyes, by means as aforesaid, within sixty days from the date of injury, shall not exceed twelve hundred and fifty dollars; and the relief for loss of one eye, by means as aforesaid, within sixty days from date of injury, shall not exceed three hundred and twenty-five dollars.

"The benefits for permanent disablement or weekly relief shall be due and payable thirty days after receipt of sufficient and satisfactory proof of injury at the principal office of the Association in Pittsburgh, Pa."

"For partial or total permanent disablement, or a complica-

tion of injuries, the payment of the weekly relief or benefits for the severest injury shall be in full satisfaction of all claims for said injuries."

" AND THIS CERTIFICATE IS SUBJECT TO THE FOLLOWING
CONDITIONS AND STIPULATIONS."

[Here followed the conditions and stipulations referred to, in paragraphs numbered from one to eight.]

" In witness whereof, the said association has caused the certificate to be signed," etc.

The following memorandum was indorsed upon the certificate :

" If the member shall sustain bodily injuries by means as provided for in this certificate, the payment of weekly relief whether totally or partially disabling for the number of days fixed in schedule on back hereof, shall be in full satisfaction of all claims for said injuries.

" FRANK K. KOHLER."

The schedule of injuries, appended, specified eight different kinds of dislocations; twenty kinds of fractures; four instances of the total loss of members; six kinds of sprains; hernia, and strangulated hernia.   The lowest number of days specified, for which relief would be allowed, was seven, and the other numbers were all multiples of seven.   This schedule was immediately succeeded by the following :

" In the event of partial permanent, or total permanent disablement, or complication of injuries by accident under schedule or otherwise, the payment of indemnity for the severest injury will be in full settlement of all claims of said accident.

" Injuries not included in the above schedule will be adjusted upon their merits.   Trifling injuries will not be made the subject of claims."

On December 30, 1888, the plaintiff, while engaged in driving out of his yard a turkey belonging to a neighbor, tripped and fell to the ground, sustaining severe injury to the muscles of his left arm.   He testified that this injury totally incapacitated him from following his regular occupation until February 3, 1889, and from that date until April 13th incapacitated him for such occupation in part; that, while he was at no time confined to his house by his injury, and was able to visit the oil wells and did so on several occasions, gave directions oc-

### Charge of Court below.

casionally as to what should be done about the wells, made purchases of supplies, paid the workmen employed at the wells and made reports to his employer, he was compelled to hire other persons to perform the principal part of his duties, and paid for such assistance $90 per month, out of the $105 which he received as salary, until February 3, 1889, and during several months after that date he paid $40 per month for assistance. One of the men, so employed by the plaintiff, stated, while testifying on his behalf, that the plaintiff's occupation, as superintendent of leases, involved the performance of certain manual labor, and the witness performed this, in the plaintiff's place, for about two months during his disability.

At the close of the testimony, the court, McMichael, J., charged the jury in part as follows :

I have read a part of this contract to you and I have given it as much consideration as I have been able to, during the time of the trial of the case, and I say to you this : That if you come to the conclusion, upon the evidence in this case, that the plaintiff was injured accidentally, as he claims here by his testimony he was injured, then the accident and the injury would be of that character that would bring it within the terms of this contract. And if, by reason of that injury, he was immediately and wholly disabled and prevented from the prosecution of any and every kind of business pertaining to his occupation as superintendent of oil wells, then he would be entitled to the indemnity under this contract, the contract proper, at the rate of twenty dollars per week for such period of continuous disability as immediately followed this accident and injury. That brings us to one of the questions that is controverted here upon the facts of this case.

The plaintiff claims that he has made out a case upon the evidence which brings him strictly within the provisions of this clause. The defendant denies that and says that he has not shown that he was immediately and wholly disabled so as to prevent him from the prosecution of any and every kind of business pertaining to his occupation. On that subject, you have the facts as they are in evidence before you, and I do not propose to comment upon those facts directly ; they are for you, gentlemen, to find the truth from. . . . . .

Charge of Court below.

If the jury should come to the conclusion that at no time after he received this injury was he so disabled that he could not attend to any of the duties of his occupation, then there is a modification in this 'contract, put there, as I understand it, and as it seems to me to be, in favor of the defendant, that is, the insurance company; and which has the effect, as I regard it, to change, somewhat, this contract, if the facts of this case bring it within this modification. The modification is found in a note upon the margin of this contract and is in these words : " If a member shall sustain bodily injury by means as provided for in this certificate, the payments of weekly relief whether total or partial disabling for the number of days fixed in schedule on back hereof, shall be in full satisfaction of all claims for said injuries." This is signed, Frank K. Kohler, secretary.

I am not real sure that you, gentlemen, get a very definite, clear idea of just what that means, and the reason I am not clear is because it has puzzled my mind considerably. But I think I understand it, and if I do, it means that there are certain particular injuries mentioned in a schedule which is appended on the back of this contract; and the object of this note is to say that if the insured or the member of the company met with any accident involuntary on his part, which inflicts any of the injuries mentioned in this schedule, then no matter whether he be disabled entirely or be disabled but partially from performing the duties of his occupation, he may nevertheless recover from this company at the rate fixed in the policy, for the number of days that are appended in this schedule opposite the name of the injury that he has so sustained. As, for instance, it is mentioned, among several others in this schedule, sprained wrist with rupture of ligaments, seven days; which, as I understand it, means that if an individual got his wrist sprained, the ligaments of it being ruptured so that he was either wholly or partially disabled from attending to the duties of his occupation, under which he accepted membership in this company, he would be entitled to recover, for the time, his wages at the rate of twenty dollars per week for the time of seven days. You will observe, for the spraining of that wrist, entirely disabling him for a space of three months, so that he could not follow his occupation; yet, the effect of this modification in this contract would be, that the company would be bound and obliged to pay

### Charge of Court below.

him for those seven days and no longer. But that modification introduced into this contract, this particular feature of it, that for all injuries of the kind mentioned in this schedule, the party may recover for partial disability. The contract proper only applies where he is wholly disabled, as I have already stated to you. The modification may enable him to recover, though he be not wholly disabled, if the injury be of the character mentioned in this schedule, if he be partially disabled.

[The particular injury of which this plaintiff complains in this case, is not mentioned in this schedule, in so many words, but we have a note on the bottom of it which says, " that injuries not included in the above schedule, will be adjusted upon their merits." That clause, as I understand it, is to be taken most strongly against the insurance company, the defendant in this case; and means this, that injuries of a general character, of sprains, of the loss of an eye, of the loss of a hand, the loss of an arm, the loss of a leg, leg broken, broken bone in sundry parts of the body,—if injuries of that character be involuntarily incurred accidentally, and they only partially disable the person receiving them from following his occupation, yet that party, under this modified contract, may be able to recover such sum as the jury might find, upon the merits of the case, he would be entitled to recover; but in no case, under that, would he be enabled to recover more than he would be enabled to recover if he were wholly disabled, and for the time that he was wholly disabled. I understand the modification, to be a modification, for the most part, in favor of the insurance company; but, it is in favor of the insured, so far as to let him in to recover for injuries of this character, which do not wholly and entirely disable him from performing all his duties in his occupation.] [4] . . . . .

The defendant requests the court to charge:

1. That under all the evidence the verdict must be for defendant.

Answer: This point is refused.[1]

If the first point be refused, the court is then respectfully requested to charge:

2. That the contract sued on makes the defendant liable only in case of total disability in the claimant to prosecute any and every kind of business pertaining to the occupation under which

he is rated and accepts membership; and, if the jury find from the evidence that, during the period of the alleged injury to plaintiff, he did attend to and prosecute a part of the business of superintendent of oil lease (not working), such as making purchases, paying wages, visiting the leases in a buggy and giving directions as to the management thereof, and directing the making of reports to his employers, then he was not totally disabled and prevented from the prosecution of said business, and the verdict must be for defendant.

Answer: This point is refused as it is written. The plaintiff may recover something under the contract in evidence, which includes the marginal note thereon and the schedule attached thereto, though he was not totally disabled, as stated in the point. The attention of the jury is called to the instructions given in the general charge as to under what circumstances the plaintiff is entitled to recover, and if so entitled, then, how much is he entitled to recover? [2]

5. That in no event can the plaintiff recover, under the policy in suit, for any alleged partial disability.

Answer: This point is affirmed, unless the jury find that the facts bring the case within the provisions of the contract, as modified by the note on the margin, as you have already been instructed. [3]

—The jury returned a verdict "for the plaintiff, for partial disability for the time claimed, the sum of one hundred dollars." A rule for a new trial having been discharged, and judgment entered, the defendant took this appeal, assigning for error:

1–3. The answers to defendant's points. [1 to 3]

4. The part of the charge embraced in [ ] [4]

*Mr. George Shiras, Jr.,* (with him *Mr. W. H. Lusk* and *Mr. C. C. Dickey*), for the appellant:

1. The plaintiff's occupation was a material part of the contract. He was rated as a "superintendent of oil lease (not working); "and, by accepting membership under this rating, he agreed with the association that his duties as such superintendent did not include any manual labor. It appears from the testimony that he went on superintending the oil wells as usual, except that he ceased to perform manual labor, and that, under his contract, he had no right to perform. Moreover,

the jury have found that he was but partially disabled. The true construction of the contract is, that the member's right to claim relief is limited to a case of total disability.

2. It is too plain for argument that a bruised arm, or a ruptured muscle, is neither a dislocation, a fracture, a total loss of a member, a sprain, nor hernia; nor an injury similar to any of those mentioned in the schedule on the back of the policy. By the terms of the schedule, injuries not mentioned in it are to be adjusted on their merits, that is, in accordance with the contract; and the adjustment must necessarily be left to the company, and is not the subject of an action. It is nowhere agreed that the opinion of a jury shall be substituted for the contract. The schedule must be construed so as to be consistent with the main contract. Its meaning is, that the injuries mentioned in it will be assumed to cause total disablement for the respective times specified, and all other injuries are referred back to the certificate itself. The parties have construed it· for themselves as a contract to pay in case of total disability: Lehigh C. & N. Co. v. Harlan, 27 Pa. 429; Pratt v. Campbell, 24 Pa. 184.

*Mr. R. P. Scott*, for the appellee:

1. The clause indorsed on the contract, as a part of it, and signed by the secretary, clearly recognizes the right of a member to relief for partial disablement. This is the only reasonable and fair construction that can be given to it. Having so modified the contract, the defendant cannot say that this indorsement was not intended to have its legal effect, but that it was placed on the margin of the certificate only to mislead.

2. It is true, the plaintiff's injury is not one of those specified in the schedule; but the provision that injuries, not included therein, shall be adjusted on their merits, makes it apparent that the schedule was not intended to state all the injuries covered by the certificate. If the provision referred to was not intended to obligate the defendant to pay for losses sustained through injuries not specified, it has no force or effect and should not have been placed there.

3. That the plaintiff was incapacitated from performing the usual duties incumbent on a superintendent of an oil lease, and was compelled for months to employ another person to

perform his duties, was not controverted. And it was not requisite, to enable him to recover, that he should have been rendered insensible or idiotic, or deprived of the power of thought and speech, during the whole time he suffered from the effects of his injury.

OPINION, MR. JUSTICE GREEN :

The contract between these parties is composed of two main divisions. The second of them is a specification of several " conditions and stipulations " to which the main contract, or " certificate," as it is called, is subject. This certificate is the body of the contract, and constitutes the first division. It declares the kinds of accidents. for which the association will grant indemnity or relief. These are of two classes only : one is accidental injury which results in death ; the other is accidental injury which is permanently disabling. The latter injuries are divided into two kinds: One called " total permanent disablement," viz., the loss of both hands, both feet, or hand and foot ; and the other, called " partial permanent disablement," viz., the loss of one hand or foot, or both eyes. In the first of these two kinds of accidental injuries, the limit of the relief is twenty-five hundred dollars ; in the second, twelve hundred and fifty dollars ; and a special provision is also made that, for the loss of one eye, the limit shall be three hundred and twenty-five dollars. The amount of weekly relief was fixed at not to exceed twenty dollars, and for a period not to exceed twenty-six consecutive weeks.

There is no provision in the main body of the contract for the payment of any benefits for injuries which result in partial disablement, unless it is also of a permanent character. At the end of the printed conditions and stipulations, the contract is formally closed with the customary attesting clause, followed by the signatures of the president and secretary, and the corporate seal. Under the contract, as thus closed, there would be no relief for the plaintiff, as his injury, though a partial disablement, was not a partially permanent disablement. But it is contended, and was so held by the court below, that by an indorsment upon the back of the certificate, general relief was given in all cases of partial disablement. The language of the indorsement is as follows :

"If the member shall sustain bodily injuries by means as provided for in this certificate, the payment of weekly relief whether totally or partially disabling for the number of days fixed in schedule on back hereof, shall be in full satisfaction of all claims for said injuries."

Then follows the schedule designating forty different kinds of injuries, for each of which is specified a fixed number of days for which relief will be allowed; and the "indorsement," by its terms, becomes applicable to each, and its meaning manifestly is that members who sustain any of those specific injuries and receive weekly relief therefor, for the number of days designated, such relief "shall be in full satisfaction of all claims for said injuries." The learned court below thought this "indorsement" enlarged the liability of the company, so as to embrace cases of merely partial disablement, and that, although the plaintiff's injury was not embraced within the enumeration of the schedule, a memorandum at the foot of the schedule in these words, "injuries not included in the above schedule will be adjusted upon their merits," sufficed to extend the obligation of the association to all kinds of injuries.

We are unable to agree to this view of the contract. The "indorsement" plainly refers to the injuries provided for in the body of the certificate. The language is, "if the member shall sustain bodily injuries by means as provided for in this certificate." Clearly the injuries contemplated by these words are the injuries referred to and provided for in the certificate, and not others of a different character. And then, whether *these* injuries be totally or partially disabling, the payment of weekly relief for the number of days designated in the schedule shall be full satisfaction. The words, "totally or partially disabling," manifestly relate to the same kind of total or partial disablement provided for in the certificate, that is, permanent injuries which are either totally or partially of that character. To hold otherwise would be to make an entirely new contract for the parties quite outside the explicit language of the certificate, without any such purpose being expressed and without any necessary implication to that effect. The "indorsement" is but a note or memorandum intended to individuate certain designated injuries for which fixed payments would be made, but of course they must be within the class of

injuries for which alone the association contracted to give relief, that is, either totally permanent, or partially permanent disablements.   The schedule did not pretend to enumerate all the injuries for which the association would be liable, but only to provide that for those that were enumerated, a given number of days would be paid for.   These days are either seven or multiples of seven; and the effect of the schedule is to determine practically the number of weeks for which the "weekly relief," mentioned both in the certificate and the indorsement, will be allowed.   But, of course, the injuries to be paid for must be generically such as the association agreed to pay for; that is, either partial permanent, or total permanent disablements.

This view is much strengthened by the foot notes immediately following the schedule.   The first of them is, "in the event of partial permanent, or total permanent disablement, or complication of injuries by accident under schedule or otherwise, the payment of indemnity for the severest injury will be in full settlement of all claims of said accident."   That is, payment for the severest injury, where there is a complication of injuries, either under the schedule or otherwise, will be in full of all claims; but, there is no enlargement of the class of injuries to be paid for beyond those which are either partially or totally permanent in their character.   The next foot note is in these words: "Injuries not included in the above schedule will be adjusted upon their merits;" plainly meaning, that injuries, not specially enumerated in the schedule, shall be adjusted upon their merits.   But of course they must be injuries for which the association was liable to pay by the terms of their contract, and not an entirely new, different, and independent class of injuries, for which there was no agreement to pay.   Read in this way, the contract of the parties is intelligible, consistent, and distinct.   The meaning is inartistically expressed, but we think quite sufficiently to require the construction we have placed upon the instrument.   To open up the entire range of all possible injuries by accident, and declare that they are within the operation of the certificate, would certainly be doing violence to its express terms, and would be without the authority of any necessary or just implication.   As the plaintiff's injury was neither a partially permanent nor to-

Statement of Facts.

tally permanent disablement, it does not come within the terms of the contract.

Judgment reversed.

