(133 So. 707)
## METROPOLITAN LIFE INS. CO. v. BLUE.
### 6 Div. 835.

Supreme Court of Alabama.
March 19, 1931.

Rehearing Denied April 23, 1931.

Cabaniss, Johnston, Cocke & Cabaniss and Lucien D. Gardner, Jr., all of Birmingham, for appellant.

B. J. Dryer, of Woodward, for appellee.

**BOULDIN, J.**

The suit is on an insurance policy to recover the monthly benefits or income alleged to be due for "total and permanent disability" by reason of disease.

The controlling question here is whether defendant was due the affirmative charge, a directed verdict.

The plaintiff, Dr. Foy E. Blue, took a life insurance policy for $10,000, with supplemental contract, whereby, in consideration of an extra premium of $23.20 per annum, he should be paid an income of $100 per month under stipulated conditions.

The pertinent stipulations are these:

"Metropolitan Life Insurance Company.

\*   \*   \*   \*   \*   \*

"Hereby· agrees, that upon receipt by the Company at its Home Office in the City of New York of due proof, on forms which will be furnished by the Company, on request, that the insured has, while said Policy and this Supplementary Contract are in full force and prior to the anniversary date of said Policy nearest to the sixtieth birthday of the insured, become totally and permanently disabled, as the result of bodily injury or disease occurring and originating after the issuance of said Policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of at least three months, it will, during the continuance of such disability.

"1. Waive the payment of each premium falling due under said Policy and this Supplementary Contract, and,

"2. Pay to the insured \* \* \* a monthly income of $10 for each $1,000 of insurance, or of commuted value of instalments, if any, under said Policy.

"Such waiver shall begin as of the anniversary of said policy next succeeding the date of the commencement of such disability, and such payments shall begin as of the date of the commencement of such disability, pro-

vided, however, that in no case shall such waiver begin as of any such anniversary occurring, nor shall such payments begin as of a date, more than six months prior to the date of receipt of the required proof. * * *

"Notwithstanding that proof of disability may have been accepted by the Company as satisfactory, the insured shall at any time, on demand from the Company, furnish due proof of the continuance of such disability, but after such disability shall have continued for two full years the Company will not demand such proof more often than once in each subsequent year. If the insured shall fail to furnish such proof, or if the insured shall be able to perform any work or engage in any business whatsoever for compensation or profit, the monthly income herein provided shall immediately cease, and all premiums thereafter falling due shall be payable according to the terms of said Policy and of this Supplementary Contract."

On or about January 16, 1929, Dr. Blue, an eye, ear, nose, and throat specialist, while operating, stuck a needle in his left thumb. Infection followed and speedily developed into a grave case of general septicæmia. For six weeks or more his condition was serious. Several incisions for drainage purposes were made in the hand and fingers; the infection developed an abscess in the right shoulder, resulting in two incisions there. He was confined to the hospital, including return trips, for 54 days; was treated in Atlanta in April, and at Hot Springs in June. An operation to straighten the little finger was had in July. On August 1, 1929, he resumed the work of his profession and so continued to the time of the trial, March 14, 1930.

At the time of the trial it appeared there was some stiffness in the left wrist, a drawn condition of the little finger, and to a less degree the third and fourth fingers. One physician thinks the little finger will never be normal without a further operation. There is limited freedom of motion in the right shoulder. The shoulder still gives pain at times, especially when under strain in operations. Dr. Blue is still under advisory treatment of a physician.

He can and does, however, pursue his profession in numerous ways without harmful effect, unless to retard a full recovery. He removes tonsils, treats diphtheria and other throat troubles, examines eyes and fits glasses, treats some troubles of the nose and ear which do not require the free use of both hands.

Blood poisoning of this class is slow of recovery. Full recovery usually requires ten to fifteen months, occasionally two to three years, and possibly, if reinfection intervenes, the patient may never be a well man. There may be a flare-up during the convalescing period. Dr. Blue gives the opinion that he will be able to continue his profession. All the other testimony is professional. None of these witnesses questions this as the reasonable outlook. There is evidence that Dr. Blue went to work too soon as regards his own safety, but none denies that with proper care his condition may be reasonably expected to improve; nor, with one exception, that his recovery will probably be complete.

This summary of the evidence, which is without substantial conflict, suffices, we think, to present the case of the insured in its strongest aspects. Does it make a case of "total and permanent" disability?

We have had occasion to consider "total disability" or "total disablement" in accident policies.

In United States Casualty Co. v. Perryman, 203 Ala. 212, 82 So. 462, there was a sprain of the kneejoint. The insured did not at the time think it serious, and proceeded in good faith to do his usual work in part, but becoming worse, he did become wholly disabled for a time, and it appeared that, with due regard to his own care, he should not have worked from the beginning. We held such evidence would support a finding of total disability from the beginning, and that entering upon his work, although it may have aggravated the trouble, being in good faith, worked no estoppel against him. The policy provision was this: " '(a) Continuous disablement and inability from date of accident to perform any and every business duty or occupation—hereinafter called total disablement.' "

Said the court: "The meaning of the quoted provisions of the policy is not that the injury or accident which shall entitle the insured to pay as for a total disability shall be such as to render it physically impossible for him to perform or discharge any of the duties of his business or employment. Total disability may exist though it is physically possible for insured to perform occasional acts as part of his employment or business."

In Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909, 911, a traveling salesman received an accidental wound in the foot. While under treatment, he continued in employment for some three months. He grew worse, and two months later died of blood poisoning. Said the court: "The term 'total disability' is a relative term, depending in a measure upon the character of the occupation and the capabilities of the insured, and to a large extent upon the circumstances of the particular case. Ordinarily it is a question of fact, and not of law. 4 Cooley's Briefs, 3312. Where the policy insures against accidental injuries 'wholly and continuously disabling him (the insured) from transacting any and every kind of business pertaining to

his occupation,' to constitute total disability, it is not necessary that an injury should render the insured physically unable to transact any kind of business pertaining to his occupation, but it is sufficient if the injury is such that common care and prudence require him to desist from transacting such business in order to effect a cure. This is a duty he owed to the insurer as well as to himself." The same rule is reaffirmed in New York Life Ins. Co. v. McLean, 218 Ala. 401, 118 So. 753, is supported by numerous authorities cited and quoted in the above case, and must be regarded as the settled law of Alabama.

Without question Dr. Blue had a "total disability" until August 1, 1929. The evidence would support a finding that a prudent regard for his own health would have justified his desisting from the work of his profession until his recovery was further advanced.

In Perryman's Case, supra, it was said: "He cannot by his own subsequent wrong or fault increase the injury or so extend the time of disability."

No question of the application of this rule is or could well be presented in the case before us. So, we conclude, the period of "total" disability, under the evidence might have extended beyond August 1st. How long thereafter is quite conjectural.

Appellant calls attention to the definition of "totally disabled," in this policy, viz., "So as to be prevented thereby from engaging in any occupation or work for compensation or profit," and would construe this as negativing any liability, after it appears without dispute that he can and does perform some work without hurt.

■ We do not construe the quoted clause as changing the general and accepted meaning of "totally disabled." Nor does the fact that this is a supplemental contract attached to a life policy call for a different construction. If life policies are framed and sold with provisions covering the field usually occupied by accident insurance, like terms must impose like obligations.

■ "Prevented from engaging in any work or occupation," as applied to this case, means prevented from doing substantial and profitable work in his profession.

■ We cannot give assent to the doctrine that he is totally disabled because he is somewhat handicapped, and cannot do all the specialized work he could before the disability intervened. "Total" is in contradiction to "partial" disability. The one cannot by mere construction be made to cover the other. Under the uncontradicted evidence, we conclude that, at the time of the trial, Dr. Blue was laboring under only a partial disability.

■ Total disability, followed by partial disability, whether temporary or permanent, is not within this policy.

■■ Appellee conceives that because the policy provides for payments to begin within three months after total disability intervenes, and because the insurer reserves the right to call additional proofs from time to time after accepting proofs of permanent total disability, the expression "totally and permanently disabled" covers that disability for three months, or some other undefined period. Some authority for such construction is not lacking. But the great weight of authority is otherwise, and for good reason. "Permanent" has a well-known obvious meaning; is in contradiction to "temporary," so used in legal enactments as well as contracts. The construction insisted upon would wipe out all distinction between "temporary" and "permanent" disability.

So, the provisions mentioned are properly construed as affording a reasonable time to ascertain whether the disability is "total and permanent," and to keep open the question if after events disclose that it was not in fact permanent, but only reasonably appeared so to be. Ginell v. Prudential Ins. Co., 237 N. Y. 554, 143 N. E. 740, adopting the opinion of Justice Van Kirk, 205 App. Div. 494, 200 N. Y. S. 261; Hawkins v. John Hancock Life Ins. Co., 205 Iowa, 760, 218 N. W. 313; Conley v. Pacific Mutual Life Ins. Co., 8 Tenn. App. 405; Metropolitan, etc., Co. v. Noe, 161 Tenn. 335, 31 S.W.(2d) 689; Leduc v. Metropolitan Life Ins. Co., 65 Quebec Sup. Ct. 320; Home Benefit Association v. Brown (Tex. Civ. App.) 16 S.W.(2d) 834; Shipp v. Metropolitan Life Ins. Co., 146 Miss. 18, 111 So. 453; Hollobaugh v. People's Mutual Accident Ins. Association, 138 Pa. 595, 22 A. 29; Joyce on Insurance (2d Ed.) pp. 5246, 5222; 1 C. J. 466; Doyle v. New Jersey Fid. & Plate Glass Ins. Co., 168 Ky. 789, 182 S. W. 944, Ann. Cas. 1917D, 851; Ellis v. New York Life Ins. Co., 214 Ala. 166, 106 So. 689.

Defendant was due the affirmative charge. Its refusal was error.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.