141 So. 547

## NEW YORK LIFE INS. CO. v. TORRANCE.

### 6 Div. 977.

Supreme Court of Alabama.

March 31, 1932.

Rehearing Denied May 19, 1932.

Douglas Arant, Kingman C. Shelburne, and Bradley, Baldwin, All & White, all of Birmingham, amici curiæ.

Lange, Simpson & Brantley, of Birmingham, for appellee.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

**GARDNER, J.**

The suit was to recover under the "permanent total disability" clause of three separate life insurance policies issued by defendant, two of which are identical, and the third differing only in minor respects, not essential here to note. In each it is provided that in order for the disability benefit to attach, the insured must become disabled before the anniversary of the policy on which the insured's age at nearest birthday is sixty years. Plaintiff became sixty years of age on September 30, 1928. The anniversary of the first two policies (in point of time of issuance) nearest to plaintiff's sixtieth birthday was March 28, 1929, and February 7, 1929, and that of the third March 29, 1929.

In order to recover under such disability benefit clauses, therefore, plaintiff must have become wholly and permanently disabled within the meaning of the language of these policies prior to the above-noted anniversary dates. Plaintiff insists, however, and so alleges in his complaint, that "on the 15th day of March, 1928," he had, "within the meaning of said policy," become and was wholly disabled by disease, viz., "Parkinson's Disease," otherwise called "Paralysis Agitans," so that plaintiff was and thereafter has been, and will be, presumably thereby, "permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit." These averments were in substantial conformity to the provisions of the policies as to disability benefits, which, in respects here important, read as follows:

"And the company agrees to pay the insured one-tenth of this policy per annum, during the lifetime of the insured, if the insured becomes wholly and permanently disabled before age 60, subject to all the terms and conditions contained in section 1 hereof.

"Section 1. Total and Permanent Disability Benefits. Whenever the company receives due proof, before default in the payment of premiums, that the insured, before the anniversary of the policy on which the insured's age at nearest birthday is sixty years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days—the permanent loss of the sight of both eyes, or the severance of both hands, or of both feet, or of one entire hand and one entire foot, to be considered total and permanent disability without prejudice to other causes of disability—then," and here follows provision for waiver of premiums and payment of the annuity therein stipulated during the lifetime and continued disability of the insured, not necessary here to detail.

Coming to the merits of the case, the question treated by counsel for the respective parties as of prime importance, relates to the refusal of the affirmative charge duly requested by defendant.

It appears that Dr. Torrance, the plaintiff, was for thirty years a physician and surgeon in the city of Birmingham of high repute and extensive practice, though for the past fifteen years he had largely confined his practice to surgery. We gather from the record that he was an indefatigable worker—a fact which doubtless largely contributed to his present condition. He closed his office, and gave up his practice, January 8, 1930, after a diagnosis a few days before had determined his trouble as "Parkinson's Disease," a serious chronic nervous disorder, insidious in its nature and difficult of determination as to when it begins. "It lasts anywhere from one to twenty years," states one of the physicians testifying in the cause. Prior to that time, plaintiff had submitted to only one examination by a physician, and that was in August, 1929, which lasted only a short time, and resulted in no positive diagnosis. Plaintiff did not know his trouble, nor that he had this disease, and no one had so indicated to him, until the diagnosis of January 5, 1930, though he states he had been in bad shape since 1927, and that probably his trouble had existed as far back as 1925, and that he now considers that the disease had definitely manifested itself on March 15, 1928. During this time, plaintiff states that he was nervous, became weak and sluggish, dragged his feet, carried his arms against his side, characteristic of persons with this disease; had difficulty in changing his clothes and consumed more time than previously in preparing for an operation as well as in the operation itself; and that in 1928 and 1929, he performed operations with difficulty, and had to force himself to his work. A number of physicians, with whom he was intimately associated in a professional way, testified as to the symptoms of this disease, which they had previously noticed, and some of them testified they formed the opinion, in their mind—though not expressed—in the spring of 1928, and one as early as 1926, that plaintiff was suffering with Parkinson's disease. Anoth-

er, in charge of one of the hospitals, states that after noticing his condition in 1927, plaintiff did not perform operations in that hospital without a qualified surgeon being present. These physicians further testify there is no known cure for Parkinson's disease, but that its progress may be arrested and the patient's condition improved to some extent by a complete rest and cessation from all work; that such treatment should be prescribed immediately upon a diagnosis of such disease, and that they would have so prescribed for plaintiff had it been discovered as far back as 1926 and 1927 he had this disease, and that common care and prudence and good medical practice dictated he should have at that time desisted from all professional labor. One of the physicians states that he ceased sending surgical cases to plaintiff "approximately in 1926" (though he thinks he did send one case to him in 1927), "chiefly because plaintiff had apparently gotten very slow and unsteady in his hands, and I felt that a surgeon should be a little more acute, a little more steady, a little more safe in the eyes of the public." This physician conducted the brief examination of plaintiff in August, 1929, when no diagnosis was reached. Other physicians, save perhaps with one exception, seem to have sent surgical cases to plaintiff through 1929 and up to the time he discontinued the practice. Other than noted in the above quotation, the physicians did not notice any impairment in plaintiff's ability to operate during all of this time. And plaintiff himself evidently was not impressed with being seriously affected until his first examination in August, 1929, as in a number of applications for disability benefits under other policies, he places the beginning of his sickness at that particular time. The symptoms of this disease, now viewed in the retrospect, were noted by those intimately associated with the plaintiff. But from the record before us, it is evident that to the world outside, plaintiff was conducting his practice in the usual and customary manner throughout the years 1928 and 1929, and with the usual degree of success.

Much evidence is presented showing the amount of work and its character performed by plaintiff during this time, but a detailed discussion of it here would serve no useful purpose. We make reference thereto in a general way. First it is to be noted that his office remained open all of this time and he went there every day until it was closed January 8, 1930. He took out a license to practice medicine and surgery in Birmingham for the years 1928, 1929, and 1930. During the years 1928 and 1929, and for considerable time prior thereto, plaintiff had a contract with both the Republic Iron & Steel Company, and the Gulf States Steel Company, by which he furnished all medical and surgical services required by the employees, and paid the hospital expenses, for compensation paid by these companies, which was deducted from the wages earned by said employees. In the performance of these contracts, it would become necessary that plaintiff call in at times other doctors to assist, especially those specializing in certain lines of work, and for which he paid out of his compensation from the companies. These contracts continued in force until plaintiff's office was closed in January, 1930.

Plaintiff was also medical examiner for the defendant company in Birmingham, which required him to make physical examinations of applicants for insurance, each examination requiring thirty or forty minutes time. He was also medical referee for Alabama for the Mutual Life Insurance Company and the physical examination of applicants at his office required equal time and effort as those of defendant company, and in addition he was required to examine medical reports that had been sent in by other doctors from over the state which necessitated spending about two hours a day in the office of such company in Birmingham. This contract continued through September, 1929.

During the years 1928 and 1929, plaintiff did his surgical practice at three hospitals in Birmingham, the Norwood Hospital, Baptist Hospital, and South Highlands Infirmary, though in the latter part of 1929, he did most of his work at the first two, which he visited "up until January 8, 1930, * * * about once a day to each place."

There are in the record the hospital charts from the three hospitals showing the operations performed by plaintiff, the dates, the character of the operations, and results; the office book of plaintiff showing the patients treated, the dates, and nature of the diseases; his cashbook showing the amounts received from his practice during these two years; the canceled vouchers of the Republic Steel Corporation, Gulf States Steel Company, Mutual Life Insurance Company, and the defendant company; and there is evidence as to the examinations conducted for these insurance companies. Defendant's counsel have compiled all of this detail proof and formulated a table of results, the correctness of which is not questioned. This table shows the number of operations, as well as nonoperative cases, the examinations, the gross and net income for each month for the years 1928 and 1929, but we think the results for the years will suffice for the purpose in hand. For the year 1928, it shows two hundred and twenty-four operative, and one hundred and one nonoperative, cases, and four hundred and forty examinations, with a gross income of $21,671.59, and a net income of $14,662.34. For the year 1929, it discloses eighty-five operative, and one hundred and thirteen nonoperative cases, three hundred

and one examinations, with a gross income of $18,348.24, and net income of $10,253.90.

Of course this tabulation does not represent the entire amount of actual work done, as for instance the visits at the hospitals to the patients each day, and the time spent in the office of the Mutual Life Insurance Company examining reports of doctors from over the state. And an examination of the evidence discloses also that during all of this period, plaintiff was performing many major operations, and without any indication whatever of criticism so far as the questions of surgical skill and ability are concerned. Nor does the net income represented above account for office expense, which is to be deducted. No exactness is required, however, as to the matter of gross or net income, but the consideration thereof is useful as illustrative of the work done by the plaintiff and as bearing upon the question of total disability from engaging in any occupation for remuneration or profit.

It may be conceded the contract is not one of indemnity against loss of income, but against loss of capacity to work. Volume 7 (Supplemental) Cooley's Briefs on Insurance, § 3288; U. S. Casualty Co. v. Perryman, 203 Ala. 212, 82 So. 462.

It must also be conceded, however, that the contract discloses the major purpose for indemnity against loss of capacity to work is protection against loss of income, and the very substantial sums earned by insured in his profession clearly go a long way to show that earning capacity was not lacking.

■■■ "The term 'total disability' is a relative term, depending in a measure upon the character of the occupation and the capabilities of the insured, and to a large extent upon the circumstances of the particular case. Ordinarily it is a question of fact, and not of law." Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909, 911; United States Casualty Co. v. Perryman, 203 Ala. 212, 82 So. 462, 464. "But where * * * the evidence is without conflict, and contrary inference cannot reasonably be drawn therefrom, the affirmative charge is properly given." Ellis v. N. Y. Life Ins. Co., 214 Ala. 166, 106 So. 689, 691; Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 710; Aetna Life Ins. Co. v. Lasseter, 153 Ala. 630, 45 So. 166, 15 L. R. A. (N. S.) 252.

■■■ In harmony with the great weight of authority, this court adheres to the rule of liberal construction in favor of the insured of insurance policies in case of any ambiguity, holding, however, on the other hand that where the language is unambiguous, and but one reasonable construction of the contract is possible, it must be expounded as made, as the courts are not at liberty to make new contracts for the parties. Continental Casualty Co. v. Ogburn, 175 Ala. 357, 57 So. 852, Ann. Cas. 1914D, 377; Union Central Relief Ass'n v. Johnson, 198 Ala. 488, 73 So. 816.

■■■ The policy requirement here is that the insured become wholly and permanently disabled before the anniversary of the policy on which the insured's age at nearest birthday is sixty years, that is, that he "has become wholly disabled of bodily injury or disease so that he is and will be presumably thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit." As previously noted, we do not find any evidence justifying the conclusion that during the period here in question the insured suffered any impairment as to his skill as a physician and surgeon. At the most, his work was made somewhat more difficult, and his movements some slower, but the record is persuasive he did ,his work ably and well. The fact that he was somewhat handicapped could at best be termed only a partial disability, which, as held in Metropolitan Life Ins. Co. v. Blue, supra, is in contradiction to the word total. "The one cannot by mere construction be made to cover the other." And, as said in Cato v. Aetna Ins. Co., 164 Ga. 392, 138 S. E. 787, 790, "Total disability is the antithesis of partial disability. One is the opposite of the other."

A majority of the courts adhere to the liberal rule of construction that the "total disability" contemplated in insurance policies does not mean, as its strict literal construction would require, a state of absolute helplessness, but means inability to do substantially all of the material acts necessary to the prosecution of insured's business or occupation, in substantially his customary and usual manner (Metropolitan Life Ins. Co. v. Bovello, 56 App. D. C. 275, 12 F.(2d) 810, 51 A. L. R. 1040 and note; Note 41 A. L. R. 1376; Note 24 A. L. R. 203; 1 Corpus Juris, 463), and this statement of the rule has been noted with approval by this court. United States Casualty Co. v. Perryman, supra. And in Metropolitan Life Ins. Co. v. Blue, supra, the court held that the words "prevented from engaging in any work or occupation," as then applied, meant "prevented from doing substantial and profitable work in his profession."

The evidence in this record discloses, without material conflict, that insured during this period did in fact do substantially all the material acts necessary to the prosecution of his profession in substantially his customary and usual manner, and, indeed, we do not understand that plaintiff's counsel contend otherwise. Their argument rests upon the theory, accepted by the trial court, that, notwithstanding the performance by the insured of his work in the usual and customary manner, evidence to the effect that common care and prudence required that he desist there-

from, in order to effectuate a cure or arrest the progress of the disease, sufficed to establish total disability, and much reliance is placed upon what was said by this court in this regard in the Plaster Case and Perryman Case, supra, and by the Nebraska court in Rathbun v. Globe Indemnity Co., 107 Neb. 18, 184 N. W. 903, 24 A. L. R. 191. But we are persuaded the language of these cases has been misinterpreted, and expanded beyond its intended scope.

We gather from a reading of many cases embracing the foregoing language, upon which plaintiff relies, that the expression originated in the early history of accident insurance and as applicable to accident cases. Lobdill v. Laboring Men's Mut. Aid Ass'n, 69 Minn. 14, 71 N. W. 696, 38 L. R. A. 537, 65 Am. St. Rep. 542. The case of Young v. Travelers' Ins. Co., 80 Me. 244, 13 A. 896, decided in 1888, is frequently cited as among the earlier cases discussing the subject. These courts, in harmony with the decided weight of authority, hold to the rule of liberal interpretation of insurance policies, to the end they may receive a reasonable construction so as to effectuate the purpose for which they were made and prevent the policies from being in effect a "delusion and a snare." The insurance companies were insisting upon a literal and strict construction of the language in the policies resting liability upon total disability from accidents, and as illustrative of this insistence and the attitude of some of the courts thereto, may be noted the following from Thayer v. Standard Life & Accident Ins. Co., 68 N. H. 577, 41 A. 182, 183: "As long as one is in full possession of his mental faculties, he is capable of transacting some parts of his business, whatever it may be, although he is incapable of physical action. If the words, 'wholly disable him from transacting any and every kind of business pertaining to the occupation under which he is insured,' were to be construed literally, the defendant would be liable in no case unless, by the accident the insured should lose his life or his reason. * * * It is certain that neither party intended such a result."

In Young v. Travelers' Ins. Co., supra, the insurer sought to avoid liability because of the admission of the insured that he could do some acts necessary to be done in his business, though his proof disclosed he was wholly disabled from doing many of the material acts necessary to be done, and it was in refutation of the insurer's argument that admission of ability to do some of the acts necessary was proof conclusive against a total disability, that the expression relied upon and followed in numerous authorities, including our own, was used.

The cases of Hohn v. Inter-State Casualty Co., 115 Mich. 79, 72 N. W. 1105; Lobdill v. Laboring Men's Mut. Aid Ass'n, 69 Minn. 14, 71 N. W. 696, 38 L. R. A. 537, 65 Am. St. Rep. 542; National Life & Accident Ins. Co. v. O'Brien, 155 Ky. 498, 159 S. W. 1134; Hayes v. North American Life & Casualty Co., 151 Minn. 124, 186 N. W. 136; Metropolitan Casualty Ins. Co. v. Edwards (Tex. Civ. App.) 210 S. W. 856 (some of which are noted in 24 A. L. R. 204), make use of like language in answer to similar argument.

That the original purpose of such a rule was to refute the insistence that an occasional act of business should be held conclusive against a total disability, is illustrated by the following from the opinion in Continental Casualty Co. v. Wynne, 36 Okl. 325, 129 P. 16, 20:

"The court, after instructing that before plaintiff could recover it must be shown that the injury caused total and continuous disability to engage in any labor or occupation, then qualified the language by adding 'that, even though during the time he claimed to be totally and continuously disabled he did perform some trivial services,' such fact should not, of itself, be so construed 'as to prevent plaintiff from recovering for all of said time, if you find from the evidence that he was at the time of said trivial services unable to have performed them. The test is, not whether the plaintiff did perform any services of any character, but whether the plaintiff was able to perform services of any sort or character,' etc. This instruction was given to cover evidence that, while wounded and unable to work or perform the duties of his office, or do other labor, plaintiff had handed to some witnesses or jurors a few subpœnas upon an occasion.

"The business of plaintiff named in the policy is 'deputy sheriff, engaged in making arrests.' We believe the instruction substantially stated the law applicable to the facts of the case."

The Perryman and Plaster Cases, supra, from our own court, are of like kind and subject to a like observation; and in the statement of this rule the courts were answering such an argument as above indicated, is demonstrated by a statement of appellant's contention as found in the opinion in the Perryman Case, as follows:

"The appellant contends that as the evidence is without dispute that during the period of time claimed as total disability the insured went to his office and attempted to perform and did perform a part of his duties, which were those of traveling salesman and shipping clerk for a mercantile business, that this is conclusive against the insured, and that his disability after he attempted or did perform a part of his duties was not total.

"We are not willing to hold that such facts, though without dispute, are conclusive against the insured."

So, likewise, in the case of Rathbun v. Globe Indemnity Co., supra, cited by counsel for plaintiff, the discussion in the opinion and statement of the rule disclose it was in answer to the insistence that because the insured performed some professional duties for a short time after the accident that such was conclusive as a matter of law against total disability. That case was akin to that of Booth v. U. S. Fid. & Guar. Co., 130 A. 131, 132, 3 N. J. Misc. R. 735, where is the following language: "In view of the nature of the contract and the object sought, it is a fair and reasonable construction to hold that, where the injury is such that the results continue from the date of accident and wholly incapacitate the assured within such time as is required for the processes of nature to bring about such total disability, there is a continuous and total disability from the date of the accident. It is admitted in this cause that the condition which resulted in paralysis on June 20th was present immediately following the accident. To say that it did not wholly disable and prevent the insured from the date of the accident from performing his duties, because he endeavored to perform them, is to put a strained and unfair interpretation upon the term used, and to do violence to the obvious purpose of the contract. The fact that Booth tried to work is not to be taken as conclusive evidence of his ability to do so."

The rule serves also another purpose, as pointed out by the Georgia court in Cato v. Ætna Life Ins. Co., supra, to the effect that if in fact the insured desists from his labors on account of the accident or disease, then the evidence of medical experts that common care and prudence so demanded in the interest of his health, may be proper for consideration upon the question of total disability. In the discussion as to the rule originating doubtless in accident cases, there was no intention of course to indicate it was so confined, but merely by way of demonstration of the true meaning and purpose of the rule. It is as a matter of course equally applicable (the policy provisions admitting) to cases of disability by disease.

It was so applied by this court, and we think correctly so, in New York Life Ins. Co. v. McLean, 218 Ala. 401, 118 So. 753.

We have found no case where the rule has been applied as here attempted, to an insured who continues uninterruptedly in the performance of the substantial and material acts of his business or profession in the usual and customary way. To say that one who so performs the duties of his business is wholly disabled, is a contradiction in terms. The rule of common care and prudence has only been applied to those cases where insured has made effort and performed only some of the duties, more or less imperfectly, though suffering from serious accident or disease, and in answer to argument that such partial performance is conclusive against total disability. It has never been given so wide a scope and so extensive application as plaintiff here seeks to establish, and was never intended to conflict with or run counter to the other rule that where an insured is able to, and does, continuously perform all the substantial and material acts of his business, he is not totally disabled.

This rule was before the court in the Blue Case, supra, and the conclusion reached was that the insured being engaged in the substantial performance of his professional duties in the usual way, was not wholly disabled, in the meaning of the policy provisions.

The case of James v. U. S. Casualty Co., 113 Mo. App. 662, 88 S. W. 125, 126, cited by appellee, tends to support rather than the contrary, this conclusion, as noted in the following language: "It appears that the policy did not insure plaintiff against a disabling of the performance of the general occupation of a proprietor of a wholesale and retail queensware merchant, for it specifically limited the insurance to the office duties and traveling of such occupation. And so the question should have been, under such limited view of the clause in question, 'Was plaintiff wholly disabled from performing office duties and traveling?' The evidence shows that he was, perhaps, not so disabled, for he did, practically, much of the office duties he could have performed had he not been injured, and he did a part of the traveling."

The Kentucky court adheres to a like rule of liberal construction of insurance policies as does this court, and has rendered two decisions which are here of interest. Doyle v. N. J. Fidelity & Plate Glass Ins. Co., 168 Ky. 789, 182 S. W. 944, Ann. Cas. 1917D, 851, and Provident Life & Accident Ins. Co. v. Harris, 234 Ky. 358, 28 S.W.(2d) 40, 42. The following from the opinion in the latter case is applicable here, and expresses our view as applied to the instant case: "Applying the principles of the cases as thus developed to the facts of the case before us, we are constrained to hold that the appellee did not establish his right to recover the monthly indemnity sued for even under the doctrine of 'liberal interpretation.' As stated, the evidence showed that the appellee, although helped at times in the discharge of his duties, has during most of the time performed them all himself. He is earning the same wages as he did prior to the accident, and, although he experiences more difficulty in getting his work done, yet as a matter of fact he is doing it. This is not a case where the injured party performs only a part of the work he did prior to his accident or performs only fitfully all of such tasks. It is a case where day in and day out the injured party is

found at his labor performing all or substantially all of his duties. To permit a recovery under the liberal interpretation doctrine would be to write a new policy for the parties. This, as we said in the Doyle Case, we are not warranted in doing. Hence the court erred in not sustaining the appellant's motion for a peremptory instruction on this ground."

We are therefore constrained to the view that under the undisputed proof the affirmative charge was due to be given upon defendant's request, and for its refusal the judgment must be reversed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.