103 So. 809

## NEW YORK LIFE INS. CO. v. SINQUE-FIELD.

### 4 Div. 71.

Court of Appeals of Alabama.
June 25, 1935.

Rehearing Denied Aug. 27, 1935.

Rushton, Crenshaw & Rushton, of Montgomery, for appellant.

Mulkey & Mulkey, of Geneva, for appellee.

**BRICKEN, Presiding Judge.**

Plaintiff (appellee), brought this suit, in the court below, against appellant, the New York Life Insurance Company, a corporation, to recover the sum of $375, as damages for the breach of the provisions of a certain life insurance policy issued by said company to her on January 10, 1928. The damages sought to be recovered were alleged to have accrued from the breach by the defendant company of the provisions of a "Permanent Disability Clause," contained in said policy of insurance, and which provided that disability should be considered total whenever the insured is so disabled by bodily injury or disease that she is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit, provided such disability occurred after the insurance under the policy took effect and before the anniversary of the policy on which insured's age at nearest birthday is sixty.

The policy further provided that upon receipt at the company's home office, before default in payment of premium, of due proof that the insured is totally disabled,. as above defined, and will be continuously so disabled for life, or if the proof submitted is not conclusive as to the permanency of such disability, but establishes that the insured is, and, for a period of not less than three consecutive months immediately preceding receipt of proof, has been totally disabled as· above defined, the company would waive the payment of any premiums falling due during the period of continuous total disability and would pay to the insured a monthly income of $10 per one thousand of the face of the policy for each completed month from the commencement of, and during the period of, continuous disability.

Upon the trial of the case in the court below, the jury impaneled and sworn to try the issue between plaintiff and defendant returned a verdict for the plaintiff assessing her damages at $334.57, and judgment was accordingly entered for said sum, together with the cost which had accrued. Thereafter the defendant filed its motion for a new trial, which motion was overruled and denied by the trial court, to which the defendant duly and legally excepted. The appeal in this case is taken from the judgment for the plaintiff in said case, and from the judgment of the trial court in overruling and denying the motion for a new trial.

The errors insisted upon are: (1) The plaintiff failed to furnish the insurer with due proof of total and permanent disability as defined in the policy; (2) the plaintiff in the court below failed to prove total disability; and (3) the trial court erred in overruling the defendant's motion for a new trial.

The complaint filed by plaintiff, in the court below, seeks to recover damages for the breach by the defendant of the total disability clause contained in the policy of insurance issued by the defendant to the plaintiff.

The defendant's answer to the complaint was, "The general issue with leave to give in evidence any matter that might be specially pleaded."

■ The defendant did not offer any evidence, whatever, in the trial of the case in the court below. The defendant did not give, or offer in evidence, any matter that might be specially pleaded. The case, therefore, submitted to the court and jury was upon the complaint and the defendant's plea of the general issue in response thereto. Any failure of the plaintiff to give the insurance company due proof that she was totally and permanently disabled, if there was such failure in the proof, was not available to defendant under the plea of the gen-

eral issue, but the same should have been specially pleaded. Manhattan Life Ins. Co. v. Verneuille, 156 Ala. 592, 597, 598, 47 So. 72; New York Life Ins. Co. v. Turner, 213 Ala. 286, 287, 104 So. 643. We are further of the opinion that the "proof" offered was "due proof" within the meaning of the policy.

■ The trial court, therefore, did not err in refusing to give the affirmative charge, in its various aspects, and as applicable to the two counts of the complaint, nor in denying and refusing to grant the defendant's motion for a new trial upon the ground that the plaintiff, as a condition precedent to her right to maintain this suit, did not give the insurer due proof of her total and permanent disability. That defense was not presented by any special plea.

The real question presented by this appeal is whether or not the plaintiff suffered a total and permanent disability against which she was insured by the defendant under the policy of insurance which was issued to her by the defendant.

This court, and the Supreme Court, have frequently defined "total disability" as that term is used in the policy of life insurance involved in this case.

■ In the case of New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So. 547, 550, the court said: "The term 'total disability' is a relative term, depending in a measure upon the character of the occupation and the capabilities of the insured, and to a large extent upon the circumstances of the particular case. Ordinarily it is a question of fact, and not of law." Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909, 911; United States Casualty Co. v. Perryman, 203 Ala. 212, 82 So. 462, 464. But where the evidence is without conflict, and a contrary inference cannot reasonably be drawn therefrom, the affirmative charge is properly given. Ellis v. New York Life Ins. Co., 214 Ala. 166, 106 So. 689; Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 710, 79 A. L. R. 852; Ætna Life Ins. Co. v. Lasseter, 153 Ala. 630, 40 So. 166, 15 L. R. A. (N. S.) 252.

Again, in the Torrance Case, supra, the Supreme Court said: "A majority of the courts adhere to the liberal rule of construction that the 'total disability' contemplated in insurance policies does not mean, as its strict literal contruction would require, a state of absolute helplessness, but means inability to do substantially all of the material acts necessary to the prosecution of insured's business or occupation, in substantially his customary and usual manner (Metropolitan Life Ins. Co. v. Bovello, 56 App. D. C. 275, 12 F.(2d) 810, 51 A. L. R. 1040 and note; Note, 41 A. L. R. 1376; Note, 24 A. L. R. 203; 1 Corpus Juris, 463), and this statement of the rule has been noted with approval by this court. United States Casualty Co. v. Perryman, supra. And in Metropolitan Life Ins. Co. v. Blue, supra, the court held that the words 'prevented from engaging in any work or occupation,' as then applied, meant 'prevented from doing substantial and profitable work in his profession.' "

To the same effect is the case of Jefferson Standard Life Ins. Co. v. Simpson, 228 Ala. 146, 153 So. 198.

■ The rule above declared was later followed by this court in the case of Pacific Mutual Life Ins. Co. v. Cotton, 25 Ala. App. 439, 148 So. 177, in which this court says that cases of total and permanent disability generally involve a question of fact. That is to say, whether or not a person is suffering a total and permanent disability as applied to insurance policies is usually a question of fact to be decided by the court, or jury to which that issue may be submitted.

What does the proof in this case show? The plaintiff was injured in an automobile accident on March 3, 1932. On March 31, 1932, Mrs. Sinquefield sent to the New York Life Insurance Company her note for an insurance premium, and in the letter accompanying the same she said that she would try and take care of the note as soon as she was able, which she then thought would be some time, because, as stated by her, "I am still helpless, but will be out as soon as able."

Mrs. Sinquefield obtained blanks from the insurance company sent to her to enable her to make proof of her disability, and these blanks, after being filled out, were returned to the company on July 19, 1932, and in her letter accompanying the same she stated: "I was totally disabled when my March premium was due."

The company, after it had received the proof submitted by Mrs. Sinquefield, wrote her: "We are advised by our Home Office that they have completed a thorough investigation in respect to your claim for disability under your policy, and from the evidence submitted it does not appear to the company that you have been continuously, totally disabled for not less than three con-

secutive months, within the meaning of the disability benefit provision contained in your policy." And the company further advised her that in view of the circumstances, it could not favorably consider her claim.

As stated above, the plaintiff was injured in an automobile accident on March 3, 1932, at which time she had just passed her 48th birthday. In other words, she was 48 years old. In the automobile accident she sustained a physical injury, viz., her left shoulder blade was broken. The facts are without dispute. She immediately consulted a physician, Dr. C. P. Gay, who treated her for her injury by strapping down, with adhesive tape, her left shoulder. Her shoulder remained in that condition for a period of five weeks, and, according to the physician's statement made in writing on July 16, 1932, Dr. Gay stated that Mrs. Sinquefield was wholly disabled from engaging in any occupation whatsoever for remuneration or profit for a period of five weeks immediately following her injury, which was the period in which she was under his care and treatment. In the attending physician's report on claim for disability benefits appears this question: "Q. Give your opinion as to whether or not the insured will be permanently, continuously and wholly prevented for life from pursuing any and all gainful occupation, by reason of this disability." The answer is, "She won't be wholly disabled, yet she complains of her shoulder paining her a great deal at times now. (7–16–32)."

The question propounded called for the expression of an opinion of the physician going much further than the law of this state requires in order that liability be fixed against the insurance company. If his opinion had been asked as to whether or not the insured will be unable in her then condition, to do substantially all of the material acts necessary to the prosecution of insured's business or occupation, in substantially her customary and usual manner as provided in the Torrance Case, supra, and in the Cotton Case, supra, and whether or not she had been in such condition for three months just last preceding, we do not know what the doctor's statement in response to this question would have been.

Dr. C. P. McEachern, a practicing physician and surgeon of 37 years' experience, testified in behalf of the plaintiff that he had examined Mrs. Sinquefield's broken shoulder after it had been treated, and that he did not give her any treatment for it because there was nothing he could do, by way of treatment; that she was not able to do everything with her right arm that she was able to do with her right arm before she was hurt, because when she uses that right arm it will more or less affect the left arm, even if she does not use the left arm, because the nerves connect with each other; that whether she was able to wait on customers would be according to what they wanted; that some things she could do and some things she could not.

Dr. V. J. Thacker testified in behalf of plaintiff, and, among other things, testified as to certain X-ray photographs made by him of Mrs. Sinquefield's left shoulder, which photographs were introduced in evidence, and which showed that the broken shoulder blade had never healed; that it was his opinion, from the examination made by him of Mrs. Sinquefield's left shoulder and from the X-ray pictures, which were made in November, 1933, that she could not use her left arm satisfactorily; that she could move it, but could not do much with it; that if she used it at all, it would cause pain, and the motion would be painful, and that she would be "handicapped from performing a good many of the duties of a housewife." The doctor, on being asked if, in his opinion, Mrs. Sinquefield was totally unable to perform any of the duties connected with her work as a housewife, said: "No, she can perform some of the duties." The doctor was further asked if in his opinion from what he knew of Mrs. Sinquefield, and from what he knew from the examination he had made, she was entirely prevented from following any occupation, from performing any work, or from engaging in any business, testified: "No, not any occupation." There were other things in the line of business in which Mrs. Sinquefield had formerly engaged that she could not do.

Plaintiff testified in her own behalf, and among other things stated: "After the injury the injured parts were not in a plaster-of-paris cast, but were fastened down by adhesive for five weeks. During that time I didn't use it at all, I couldn't use it at all. Then the adhesive was taken off and I have been unable to use it only slightly since then, and that was with pain in the arm."

Mrs. Adair, a sister of plaintiff testified: "Mrs. Sinquefield is not able to perform any duties of a housewife. She does suffer severe pain when she tries to use her left arm, and cannot work."

In view of the undisputed testimony in this case, we cannot say that plaintiff, after her injury, was able to do substantially all of the material acts necessary to the prosecution of her business, or occupation, in substantially her customary and usual manner. It follows, therefore, that the trial court did not err in refusing to give the various general affirmative charges, as requested by defendant. New York Life Ins. Co. v. Torrance, 228 Ala. 286, 153 So. 463; Id., ante, p. 38, 153 So. 458.

The sufficiency of the evidence was a question for the jury under the instructions given by the trial court in the oral charge and in the several special charges requested by the defendant.

The trial court did not err in refusing to give special charge 5, requested by defendant. Said charge is double in its declarations, and the principle sought to be declared thereby was clearly and amply covered by the court's general charge.

There was no error in overruling the defendant's motion for a new trial and in refusing to grant said motion. We cannot say that the verdict of the jury was contrary to the evidence as governed by the law of this case, or that the same was contrary to the law, as charged by the court.

The judgment of the lower court is affirmed.

Affirmed.